**LEE LITIGATION GROUP, PLLC**
CK Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

OSVALDO MUNOZ *on behalf of himself, FLSA*
*Collective Plaintiffs, and the Class,*

                    Plaintiff,

        v.

THE GROUP US MANAGEMENT LLC
    d/b/a THE GROUP NYC,
LA GRANDE BOUCHERIE LLC
    d/b/a LA GRAND BOUCHERIE,
    d/b/a KAISEKI ROOM,
OLIO RESTAURANTS LLC
    d/b/a OLIO E PIU,
and EMIL STEFKOV,

                    Defendants.

---

Case No.: 22-cv-04038

**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**

Jury Trial Demanded

Plaintiff OSVALDO MUNOZ ("Plaintiff"), on behalf of himself, FLSA Collective Plaintiffs, and the Class, by and through his undersigned attorneys, hereby files this First Amended Class and Collective Action Complaint against Defendants THE GROUP US MANAGEMENT LLC d/b/a THE GROUP NYC, LA GRANDE BOUCHERIE LLC d/b/a LA GRANDE BOUCHERIE, d/b/a KAISEKI ROOM,  OLIO RESTAURANTS LLC d/b/a OLIO E PIU, ("Corporate Defendants"), and EMIL STEFKOV ("Individual Defendant," and collectively with the Corporate Defendants, the "Defendants") and states as follows:

## INTRODUCTION

1.      Plaintiff MUNOZ alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he is entitled to recover from Defendants: (1) unpaid wages due to invalid tip credit, (2) unpaid wages, including overtime, due to time-shaving, (3) illegally retained gratuities, (4) liquidated damages, and (5) attorneys' fees and costs.

2.      Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL"), that he is entitled to recover from Defendants: (1) unpaid wages due to invalid tip credit, (2) unpaid wages, including overtime, due to time-shaving, (3) illegally retained gratuities, (4) statutory penalties, (5) liquidated damages, and (6) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

5.      Plaintiff, OSVALDO MUNOZ, is a resident of Passaic County, New Jersey.

6.      At all times relevant to this action, Defendants own and operate a group of restaurants as a single integrated enterprise under the umbrella association of "The Group NYC" in the state of New York. Defendants own and operate the following Restaurants at:

        a.   La Grande Boucherie - 145 West 53rd Street, New York, NY 10019;

        b.   Kaiseki Room - 145 West 53rd Street, New York, NY 10019;

        c.   Olio E Piu – 3 Greenwich Avenue, New York, NY 10014.

             (collectively, the "Restaurants").

7.     Corporate Defendant THE GROUP US MANAGEMENT LLC d/b/a THE GROUP NYC is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business and an address for service located at 108 7th Avenue South, New York, NY 10014.

8.     Corporate Defendant LA GRANDE BOUCHERIE LLC d/b/a LA GRAND BOUCHERIE, d/b/a KAISEKI ROOM is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business and an address for service located at 145 West 53rd Street, New York, NY 10019. *See* **Exhibit A** for the liquor license for Corporate Defendant LA GRANDE BOUCHERIE LLC that show their association with both La Grande Boucherie and Kaiseki Room.

9.     Corporate Defendant OLIO RESTAURANTS LLC d/b/a OLIO E PIU is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business and an address for service located at 3 Greenwich Avenue, New York, NY 10014. *See* **Exhibit A.**

10.     Individual Defendant EMIL STEFKOV is a principal and owner of the Corporate Defendants. *See* **Exhibit A**. EMIL STEFKOV exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. EMIL STEFKOV frequently visits the Restaurants. EMIL STEFKOV exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Restaurants could complain to EMIL STEFKOV directly regarding any of the terms of their employment, and EMIL STEFKOV would have the authority to effect

any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. EMIL STEFKOV exercised functional control over the business and financial operations of the Corporate Defendants. EMIL STEFKOV had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class Members, and could reprimand employees.

11.     While the above-listed Restaurants are nominally separate entities, they are operated by Defendants as a single integrated enterprise, for the purposes of the FLSA and the New York Labor Law ("NYLL"). Specifically, Corporate Defendants are engaged in related activities, share common ownership and have a common business purpose:

   a.   Corporate Defendant THE GROUP US MANAGEMENT LLC is not simply a hollow umbrella organization, but the entity that directly controls Restaurants' operations in all respects.

   b.   All of the Restaurants are commonly owned by Corporate Defendant THE GROUP US MANAGEMENT LLC (which is in turn owned by Individual Defendant EMIL STEFKOV, as referenced above). *See* **Exhibit A**.

   c.   The Restaurants are all advertised on the same The Group NYC platform, https://thegroup.nyc/, and this website provides links to the individual websites of all the Restaurants operating under The Group NYC Banner. In the webpage titled "Our Chefs", The Group NYC lists the chefs of the Olio E Piu, Kaiseki Room, and all Boucherie Restaurants. *See* **Exhibit B** for screenshot of the webpage.

   d.   Individual websites of both Boucherie and Olio E Piu Restaurants feature links to The Group NYC's webpage. *See* **Exhibit C** for screenshots of the webpages.

e.   Defendants have centralized control of human resources and employee matters. Attached as **Exhibit D** is the screenshot of the "Careers" page of Defendants, https://harri.com/the-group-nyc, which is linked from The Group NYC, Boucherie, and Olio E Piu's websites. The job listings are clearly categorized as Olio E Piu, Boucherie Union Square, La Grande Boucherie, Petite Boucherie, and Boucherie West Village, under The Group NYC.

f.   The Kaiseki Room Restaurant shares a location with La Grande Boucherie. **Exhibit A**; **Exhibit E**.

g.   Both La Grande Boucherie and Olio E Piu Restaurants link to The Group NYC's website for "Event" bookings. **Exhibit F**.

h.   Defendants maintain a centralized organizational structure and implement consistent wage and hour policies, procedures, and employment practices across all of their Restaurants. Employees are interchanged among and transferred between Defendants' Restaurants, as well as supplies.

12.   At all relevant times, Corporate Defendants met the definition of an "employer" of Plaintiff under the FLSA, the NYLL, and the Regulations thereunder.

13.   At all relevant times, the work performed by Plaintiff was directly essential to the business operated by Defendants.

14.   At all relevant times, Defendants was Plaintiff's employer within the meaning of the NYLL §§ 2 and 651.

15.   At all relevant times, Plaintiff was Defendants' employees within the meaning of the NYLL §§ 2 and 651.

16.     At all relevant times, each of the Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, the NYLL, and Regulations thereunder.

## FLSA COLLECTIVE ACTION ALLEGATIONS

17.     Plaintiff MUNOZ bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including porters, hosts, food preparers, cooks, dishwashers, delivery persons, servers, runners, busboys, barbacks, and bartenders) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

18.     At all relevant times, Plaintiff MUNOZ and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including overtime premium at one and a half times the regular rate for all hours worked over forty (40) in a workweek, due to a policy of time shaving. A subcollective of FLSA Collective Plaintiffs have a claim for (i) unpaid wages, including those from an improperly deducted tip credit, and (ii) for illegally retained tips. The claims of Plaintiff MUNOZ stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

19.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## **RULE 23 CLASS ALLEGATIONS – NEW YORK**

20.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("FRCP") Rule 23, on behalf of all non-exempt employees (including porters, hosts, food preparers, cooks, dishwashers, delivery persons, servers, runners, busboys, barbacks, and bartenders) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class Period").

21.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under FRCP 23.

22.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees comprised of amongst others, servers, food runners, barbacks, and bartenders ("Tipped Subclass") who also number more than forty (40). Plaintiff MUNOZ is a member of both the Class and the Tipped Subclass.

23.     Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same

Defendants' corporate practices of (i) failing to pay proper wages, including overtime due to time shaving, (ii) failing to provide Class Members with proper wage statements with every payment of wages, and (iii) failing to properly provide wage notices to Class Members, at date of hiring and annually, per requirements of the NYLL.

24.     With regards to Plaintiff and the Tipped Subclass, Defendants also failed to pay them the proper wage because Defendants were not entitled to claim any tip credit because they failed to meet statutory requirements under the NYLL. Plaintiff and the Tipped Subclass suffered from Defendants' failure to pay wages due to Defendants' invalid tip credit allowance because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding twenty percent (20%) of the total hours worked each workweek, (iii) implemented an invalid tip pooling scheme in which managers illegally retained tips, (iv) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period, and (v) failed to accurately keep track of daily tips earned and maintain records thereof.

25.     Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

26.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation, and have previously represented plaintiffs in wage and hour cases.

27.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

28.     Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who

are not named in the First Amended Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

29.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a.  Whether Defendants employed Plaintiff and the Class Members within the meaning of the New York law;

b.  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and the Class Members;

c.  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and the Class Members for their work;

d.  Whether Defendants properly notified Plaintiff and the Class Members of their hourly rates and overtime rates;

e.  Whether Defendants paid Plaintiff and Class Members the proper wages for all hours worked;

f.  Whether Defendants paid Plaintiff and Class Members the proper overtime compensation under the NYLL;

g.  Whether Defendants caused time shaving by paying Plaintiff and Class Members only for those hours which they were scheduled to work, rather than for the actual hours that they worked;

h.  Whether Defendants properly provided notice to all tipped employees that Defendants were taking a tip credit;

i.  Whether Defendants accurately tracked the amount of tips earned each day and maintained records thereof;

j.  Whether Defendants caused tipped employees to engage in non-tipped duties exceeding twenty percent (20%) of each workweek;

k.  Whether Defendants took the proper amount of tip credit allowance for each payment period under the NYLL;

l.  Whether Defendants established an invalid tip pooling arrangement by illegally including non-tipped employees, including managers, in the tip pool;

m.  Whether Defendants established an invalid tip pooling arrangement by instituting an invalid tip pooling scheme in which Plaintiff and the Tipped Subclass did not agree to;

n.  Whether Defendants retained any portion of the gratuities for their tipped employees;

o.  Whether Defendants provided proper wage notice, at date of hiring and annually thereafter, to all non-exempt employees per requirements of the NYLL; and

p.  Whether Defendants provided proper wage statements informing (i) tipped employees of the amount of tip credit taken for each payment period, and (ii) all non-exempt employees of information required to be provided on wage statements under the NYLL.

## **STATEMENT OF FACTS**

30.    In or around February 2021, Plaintiff MUNOZ was hired by Defendants to work as a busser at Defendants' "La Grande Boucherie" restaurant located at 145 West 53rd Street, New

York, NY 10019. Plaintiff's employment with Defendants was terminated in or around December 2021, upon his return from taking five (5) days off due to testing positive for COVID-19.

31.     From the start of Plaintiff's employment until the end of his employment, Plaintiff was scheduled to work five (5) days per week, two (2) days per week from 4:00 p.m. to 12:00 a.m., and three (3) days per week from 4:00 p.m. to 1:00 a.m.

32.     From the start of his employment until the end of his employment, Plaintiff was paid the prevailing tip credit minimum wage.

33.     Throughout his employment, on a daily basis Plaintiff was required to come in thirty (30) minutes prior to his shift starting to perform prep-work, such as polishing silverware and glassware, setting up tables. However, Plaintiff was not permitted to clock in until his shift started at 4:00 p.m. FLSA Collective Plaintiffs and Class Members were similarly required to come in early and perform this prep-work prior to clocking into their shifts.

34.     Approximately twice (2) per week, Plaintiff would clock out from his shift, but Defendants would ask him to perform a final task before leaving, such as cleaning a few tables or throwing out the garbage, before leaving. This took approximately thirty (30) minutes. FLSA Collective Plaintiffs and Class Members were similarly required to come in early and perform this prep-work prior to clocking into their shifts.

35.     At all relevant times, Plaintiff, a subcollective of FLSA Collective Plaintiffs and the Tipped Subclass were paid below the minimum wage at an invalid "tip credit" minimum wage. With respect to Plaintiff, a subcollective of FLSA Collective Plaintiffs and the Tipped Subclass, Defendants were not entitled to claim any tip credit allowance under the FLSA or NYLL because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-

tipped duties for hours exceeding twenty percent (20%) of the total hours worked each workweek, (iii) implemented an invalid tip pooling scheme in which managers and non-tipped employees participated, (iv) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period, and (v) failed to accurately keep track of daily tips earned and maintain records thereof.

36.     During Plaintiff's employment with Defendants, Plaintiff, a subcollective of FLSA Collective Plaintiffs, and the Tipped Subclass were required to engage more than 20% of their working time in non-tipped related activities, such as cleaning, rolling silverware, polishing glasses, setting tables, and preparing garnishes for drinks. Even though Defendants required tipped employees to engage in non-tipped activities for hours exceeding twenty percent (20%) of the total hours worked each workweek, Defendants improperly claimed tip credit for all hours worked by tipped employees.

37.     Plaintiff also suffered from Defendants' invalid tip pooling arrangement. Defendants implemented a policy where Plaintiff were subject to a tip pool to which they did not agree, which was set by and enforced by Defendants. Defendants failed to maintain tip sheets and failed to inform Plaintiff their respective tip pool contribution. Furthermore, regardless of the workload and the number of customers, the weekly tip amounts did not vary. Lastly, when Plaintiff worked a catering or private event, Defendants unlawfully retained their earned gratuities, where they gave Plaintiff a flat payment in lieu of the actual gratuities earned.

38.     Plaintiff and other tipped employees did not receive notice that Defendants were taking a tip credit, in violation of the NYLL. In addition, Plaintiff and the other tipped employees did not receive any notice as to the amount of tip credit allowance taken for each payment period

during their employment. Therefore, any purported tip credit taken by Defendants with respect to Plaintiff and/or tipped employees is invalid.

39.     Plaintiff, a subcollective of FLSA Collective Plaintiffs, and the Tipped Subclass suffered from Defendants' retention of gratuities through Defendants' invalid tip pooling arrangement. Defendants implemented a policy at the Restaurants where Plaintiff and other non-exempt tipped employees were subject to a tip pool they did not agree to, which was set by and enforced by Defendants. Furthermore, Defendants failed to maintain tip sheets and failed to inform Plaintiff of his respective tip pool contribution. As a result, Defendants illegally retained tips through the tip pooling arrangement. Such improper tip pooling policy invalidates Defendants' tip credit allowance.

40.     At all relevant times, Plaintiff's, a subcollective of FLSA Collective Plaintiffs and the Tipped Subclass's weekly earned tips remained substantially the same regardless of how busy a week they had. Managers and owners improperly failed to pass on all gratuities that properly belonged to the Plaintiff, a subcollective of FLSA Collective Plaintiffs, and Tipped Subclass.

41.     Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff, FLSA Collective Plaintiffs and Class Members for all hours worked, including overtime for hours worked over forty (40) due to a policy of time shaving.

42.     Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff, a subcollective of FLSA Collective Plaintiffs, and Tipped Subclass their proper wages, including overtime, due to an invalid tip credit.

43.     Defendants knowingly and willfully failed to provide Plaintiff and Class Members with proper wage notices at hiring and annually thereafter. Plaintiff and Class Members did not

receive proper wage notices either upon being hired or annually since the date of hiring in violation of the NYLL.

44.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the NYLL. Defendants failed to reflect the actual number of hours worked and also failed to provide Tipped Subclass Members with proper pay stubs reflecting the tip credit claimed by for each pay period.

45.     In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the New York State legislature.   Defendants' failure to provide such notices trivializes the importance of these notices in protecting Plaintiff's interest in ensuring proper pay. Despite Defendants' conduct, there is a reason why the New York legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380.   Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being properly paid.

46.     Defendants' failure to provide proper wage statements and notices goes beyond generating a risk of harm to Plaintiff and Class members, rather Defendants' conduct actually harmed Plaintiff and Class members.   Defendants' failure to provide paystubs listing all hours worked and the proper rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest Defendants' calculations, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff and Class members' rights.   This conduct ensured Defendants' ability to further delay providing proper compensation

to low wage earners entitled to protection under federal and state law. Moreover, Defendants failure to provide proper wage notices permitted Defendants to obfuscate the proper rates of pay Plaintiff and Class Members were earning. Defendants' failure to provide a wage notice to employees allowed Defendants to hide their responsibility and deprive employees of proper and timely compensation.

47.     Due to Defendants' failure to provide legally mandated notices such as earning statements and wage notices, Defendants were able to hide their wrongdoing from employees, and continue to attempt to hide their wrongdoing necessitating the current litigation.  The failure to provide NYLL notices continues to result in delayed payment of all proper wages owed to Plaintiff and Class members.  This delayed payment caused Plaintiff to struggle to timely pay bills.  Class members similarly struggle to timely pay debts due to Defendants continued attempts to hide wrongdoing from employees.

48.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class Members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

49.     Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

50.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the

FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

51.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

52.    At all relevant times, the Corporate Defendant had gross annual revenues in excess of $500,000.

53.    At all relevant times, Defendants failed to pay compensation, including overtime, at the statutory rate of time-and-one-half to Plaintiff and FLSA Collective Plaintiffs for their hours worked in excess of forty (40) hours per workweek due to Defendants' time shaving policy.

54.    Defendants willfully violated Plaintiff's and a subcollective of FLSA Collective Plaintiffs rights by failing to pay them wages in the lawful amount for hours worked.  Defendants were not entitled to take any tip credits under the FLSA, because they failed to properly provide notice to all tipped employees that Defendants were taking a tip credit, rendering the tip credit invalid in respect of all tipped employees.

55.    At all relevant times, Defendants showed a willful disregard for the provisions of the FLSA by instituting an tip pooling scheme where Plaintiff and other non-exempt tipped employees were subject to a tip pool they did not agree to, which was set by and enforced by Defendants. Defendants failed to maintain tip sheets and failed to inform Plaintiff their respective tip pool contribution. As a result, Defendants illegally retained tips through the tip pooling arrangement. Such improper tip pooling policy invalidates Defendants' tip credit allowance.

56.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intend to obtain these records

by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

57.      Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their intentional failure to compensate Plaintiff and FLSA Collective Plaintiffs for every hour they worked, including regular hours and overtime hours.

58.      Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

59.      As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

60.      Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, for off-the-clock work caused by time shaving, unpaid wages due to invalid tip credit, damages representing disgorgement of illegally retained tips, plus an equal amount as liquidated damages.

61.      Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

62.      Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

63.      At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

64. Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them overtime compensation at the rate of not less than one-and-one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek.

65. At all relevant times, the Defendants engaged in a policy of time shaving, refusing to compensate Plaintiff and Class Members for all of their hours that they worked each week.

66. Defendants willfully violated Plaintiff and Class Members' rights by failing to pay them proper wages in the lawful amount for hours worked because Defendants were not entitled to claim any tip credits.

67. Defendants willfully violated Plaintiff and the Class Members' rights by instituting an illegal tip pooling scheme in which Class Members were required to share tips with non-tipped employees, including management. In doing so, Defendants willfully deprived Plaintiff and Class Members of their lawfully earned wages.

68. Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the NYLL.  Defendants are required to provide itemized listings of deductions taken on each wage statement. Defendants failed to satisfy the requirements under the NYLL because such tip credit allowance was never clearly included in wage statements to tipped employees for each payment period. Defendants also provided fraudulent wage statements that failed to accurately reflect the number of hours worked and their proper compensation, including off-the-clock work caused by time shaving and tips illegally withheld from Plaintiff and Class Members.

69. Defendants knowingly and willfully operated their business with a policy of not providing all non-exempt employees proper wage notice, at date of hiring and annually thereafter, as required under the NYLL.

70.     Due to the Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants unpaid wages, including overtime, due to time shaving, unpaid wages due to invalid tip credit, damages representing disgorgement of illegally retained tips, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to NYLL.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, FLSA Collective Plaintiffs and Class Members, respectfully request that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b.  An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid overtime compensation, including compensation due to Defendants' policy of time shaving, due under the FLSA and the NYLL;

d.  An award of unpaid wages, including overtime, due to invalid tip credit, due under the FLSA and the NYLL;

e.  An award equal to the amount of the improperly retained tips withheld by Defendants;

f.  An award of statutory penalties as a result of Defendants' failure to comply with NYLL wage notice and wage statement requirements;

g.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages, including overtime, due to time shaving, pay proper wages,

including overtime, due to an invalid tip credit, and illegal retention of gratuities pursuant to the FLSA;

h.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages, including overtime, due to time shaving, pay proper wages, including overtime, due to an invalid tip credit, and illegal retention of gratuities pursuant to the NYLL;

i.  An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

j.  Designation of Plaintiff MUNOZ as Representative of the FLSA Collective Plaintiffs;

k.  Designation of this action as a class action pursuant to FRCP 23;

l.  Designation of Plaintiff MUNOZ as Representatives of Class; and

m.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: July 8, 2022

Respectfully submitted,

By:  ___/s/ C.K. Lee_____
          C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiff, and the Class*