UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/22/2023
```

OSVALDO MUNOZ, *on behalf of himself, FLSA Collective Plaintiffs, and the Class*,

                              Plaintiff,

-against-

THE GROUP US MANAGEMENT LLC
      d/b/a THE GROUP NYC,
LA GRANDE BOUCHERIE LLC
      d/b/a LA GRANDE BOUCHERIE
      d/b/a KAISEKI ROOM,
OLIO RESTAURANTS LLC
      d/b/a OLIO E PIU,
and EMIL STEFKOV,

                              Defendants.

1:22-cv-04038 (MKV)

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

    Plaintiff Osvaldo Munoz asserts claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Defendants The Group US Management LLC, La Grande Boucherie LLC, Olio Restaurants LLC, and Emil Stefkov (collectively, "Defendants") move to dismiss these claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, the motion to dismiss is GRANTED IN PART and DENIED IN PART.

## BACKGROUND[1]

    Munoz worked as a busser five days per week at La Grande Boucherie restaurant from February to December of 2021. *See* First Amended Complaint ¶¶ 30, 31 [ECF No. 22] ("FAC" or "Complaint"). Munoz was scheduled to work 43 hours per week—two days from 4:00 p.m. to

---

[1] The following facts are taken from the Amended Complaint and accepted as true for purposes of resolving this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

12:00 a.m., and three days from 4:00 p.m. to 1:00 a.m.[2]  FAC ¶ 31.  Munoz "was paid the prevailing tip credit minimum wage" from "the start of his employment until the end of his employment."  FAC ¶ 32.

In addition to those 43 scheduled hours, Munoz alleges that he was required to arrive thirty minutes before his shift began every day to polish silverware and set tables.  FAC ¶ 33.  Two days per week, Munoz was also asked to clean tables and throw out garbage for thirty minutes after his shift ended.  FAC ¶ 34.  Munoz performed these additional tasks—amounting to 3.5 hours per week—while off-the-clock.[3]  FAC ¶¶ 33, 34.

Munoz further contends that Defendants "failed to pass on all gratuities" owed to him.  FAC ¶ 40.  Specifically, Munoz complains that "the weekly tip amounts did not vary," regardless of his workload or the number of customers he served.  FAC ¶ 37.  Munoz also alleges that he was "required to engage more than 20% of [his] time in non-tipped activities."  FAC ¶ 36.  Finally, Munoz contends that Defendants failed to provide him with "proper wage statements" and "wage notice[s]."  FAC ¶¶ 68, 69.

Munoz filed this putative class and collective action in May 2022.  See Complaint [ECF No. 1].  The FAC—which is not a model of clarity—appears to state the following claims: (1) failure to pay overtime under the FLSA and NYLL; (2) improper retention of tips under the FLSA and NYLL; and (3) failure to provide notices and wage statements under the NYLL.  See FAC Prayer for Relief.  Defendants move to dismiss the FLSA overtime and tip retention claims

---

[2] The opposition brief indicates that Munoz was scheduled for the 4:00 p.m. to 12:00 a.m. shift three (rather than two) days per week and the 4:00 p.m. to 1:00 a.m. shift two (rather than three) days per week—for a total of 42 scheduled hours.  See Memorandum of Law in Opposition 4 [ECF No. 28].  Because the Court is obligated to accept the allegations of the complaint as true, the Court disregards any contrary assertions in the briefing.  See Iqbal, 556 U.S. at 678.  In any event, this factual discrepancy is immaterial to resolving this motion, because in either case, Munoz worked several hours of scheduled overtime each week.

[3] Thirty minutes of pre-clock-in work five times per week (2.5 hours), plus thirty minutes of post-clock-out work twice per week (1 hour) equals 3.5 hours.

under Rule 12(b)(6), the NYLL wage notice and statement claim under Rule 12(b)(1), and in addition, ask the Court to decline supplemental jurisdiction over the remaining NYLL claims. *See* Motion to Dismiss [ECF No. 25]; Memorandum of Law [ECF No. 27] ("Def. Mem."). Munoz opposed, *see* Memorandum of Law in Opposition [ECF No. 28] ("Opp."), and Defendants replied, *see* Reply Memorandum of Law [ECF No. 31] ("Reply"). The briefing from both sides was convoluted and difficult to understand.

## LEGAL STANDARDS

### I.     Rule 12(b)(1): Lack of Subject Matter Jurisdiction

A district court "properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it,' such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). To satisfy the "'irreducible constitutional minimum' of standing," a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The burden is on "those who invoke the power of a federal court to demonstrate standing." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013).

### II.    Rule 12(b)(6): Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, the FAC must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court "must accept as true all of the allegations contained in

a complaint," this "tenet . . . is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## ANALYSIS

### I. Munoz Plausibly Alleges an FLSA Claim for Off-the-Clock Overtime Work, But Does Not Plausibly Allege the Existence of an Invalid Tip Credit

The FLSA provides that employees may not work more than forty hours per week unless they are compensated for the additional time "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).[4]

Munoz raises two different theories with respect to overtime compensation. First, he contends that Defendants failed to compensate him *at all* for the 3.5 off-the-clock overtime hours he worked each week. *See* FAC Prayer for Relief C. Second, with respect to the 3 scheduled overtime hours for which he *was* compensated, Munoz argues that he was *underpaid* for that time because Defendants utilized an invalid tip credit. *See* FAC Prayer for Relief D.

a. *Off-the-Clock (Unpaid) Overtime Work*

Munoz first contends that Defendants failed to compensate him for the 3.5 hours he spent working before and after his shifts each week (*i.e.*, thirty minutes before his shift five days per week and thirty minutes after his shift two days per week). FAC ¶¶ 33, 34. These allegations plausibly state a claim.

"[T]o state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013). Munoz must

---

[4] The NYLL adopts the same standard. *See* 12 N.Y. Comp. Codes. R. & Regs. tit. 12, § 142-2.2 (2016); *Nakahata v. New York-Presbyterian Healthcare Sys.*, 723 F.3d 192, 200 (2d Cir. 2013). Apart from requesting that the Court decline to exercise supplemental jurisdiction, *see* Def. Mem. 8–9, Defendants do not discuss dismissal of the NYLL overtime claim.

also "provide sufficient detail about the length and frequency of [his] unpaid work to support a reasonable inference that [he] worked more than forty hours in a given week." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013).

The Complaint provides such detail. Munoz was scheduled to work 43 hours each week. FAC ¶ 31. In addition to those scheduled hours, he "was required to come in thirty (30) minutes prior to his shift" each day but "was not permitted to clock in until his shift started." FAC ¶ 33. During that pre-shift time, Munoz would "perform prep-work, such as polishing silverware and glassware." FAC ¶ 33. Two days per week, Munoz was also "ask[ed] to perform a final task before leaving" for approximately thirty minutes after clocking out. FAC ¶ 34. His post-shift tasks included "cleaning a few tables or throwing out the garbage." FAC ¶ 34. Taken together, these facts suggest that Munoz performed three and a half hours of uncompensated overtime every week. These allegations are sufficient to survive a motion to dismiss. *See Smith v. Mercy Med. Ctr.*, No. 16-CV-1814, 2017 WL 3017194, at *6 (E.D.N.Y. June 6, 2017) (finding FLSA overtime claim plausible where "Plaintiff allege[d] a specific number of hours in excess of forty (40) that she worked every week, including the number of days per week . . . that she worked hours in excess of those for which she was actually scheduled to work").

Defendants do not persuade otherwise. Although Defendants complain that Munoz neglected to include factual details such as "which managers allegedly required Plaintiff to arrive early or stay late," Def. Mem. 6, such allegations are not necessary at the pleading stage to "nudge[] [Munoz's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The Court is similarly unmoved by Defendants' contention that "there are . . . myriad logical conclusions from the . . . allegations" in the Complaint. Reply 2. So long as Plaintiff's version of events is *plausible*—"even if it strikes a savvy judge that actual proof of those facts is

5

improbable"—the allegations may proceed beyond a motion to dismiss. *Twombly*, 550 U.S. at 556.[5]

Because Munoz sufficiently alleges that he was not compensated at all for 3.5 hours per week of off-the-clock overtime work, the motion to dismiss any claim based on that theory is denied.

b. <u>Scheduled Overtime Work</u>

Munoz also alleges that he was underpaid for the three *scheduled* overtime hours he worked each week (*i.e.*, the 41st, 42nd, and 43rd of his 43 scheduled hours). Specifically, Munoz claims that Defendants utilized an "invalid tip credit." FAC Prayer for Relief D.[6] The Court disagrees.

i. *Tip Credits and Tipping Pools*

Employers may compensate "tipped employee[s]"[7] at an hourly rate less than the federal minimum wage by crediting an amount of the tips received by the employee towards the minimum wage. 29 U.S.C § 203(m)(2)(A); *see Chung v. New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220, 228 (S.D.N.Y. 2002); *Benavidez v. Greenwich Hotel Ltd. P'ship*, No. 16-CV-191, 2019 WL 1230357, at *9–*10 (D. Conn. Mar. 15, 2019). This credited amount is known as a "tip credit." *See Chung*, 246 F. Supp. 2d at 228; *Benavidez*, 2019 WL 1230357, at *9–*10.

---

[5] Defendants belabor allegations made in the original complaint. *See* Def. Mem. 5; Reply 3. These arguments are unpersuasive and irrelevant because "an amended pleading ordinarily supersedes the original and renders it of no legal effect." *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000).

[6] Plaintiff concedes that he "cannot claim that [Defendants] took an invalid tip credit" for his "regular hours" because his "hourly wage of $10 is well above the non-tipped federal minimum wage of $7.25." Opp. 5; *see also Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 560 (S.D.N.Y. 2013) (An employer "violates the FLSA only if, without the tip credit, the employee's compensation would fall short of the minimum wage."). Accordingly, the Court assumes that Plaintiff does not argue that an invalid tip credit was used with respect to his 40 regularly scheduled hours.

[7] A "tipped employee" is an "employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t).

6

There are restrictions on when an employer may utilize a tip credit. To claim a tip credit, employers must provide employees with notice of the tip credit and must allow tipped employees to keep all of their tips—even if those tips surpass the minimum wage. 29 U.S.C § 203(m)(2)(A), (B). These requirements are "strictly constru[ed]." *Hernandez v. Jrpac Inc.*, No. 14-CV-4176, 2016 WL 3248493, at *25 (S.D.N.Y. June 9, 2016). In addition, if an employee "spends more than twenty percent of his . . . workweek performing non-tipped work," the employer is not entitled to claim a tip credit. *Islam v. BYO Co. (USA)*, No. 16-CIV-927, 2017 WL 2693717, at *4 (S.D.N.Y. June 20, 2017).

There is one relevant exception to the requirement that employees be permitted to keep all of their tips: tipping pools. In a tipping pool arrangement, all tips are shared among a group of employees "who customarily and regularly receive tips." 29 U.S.C. § 203(m)(2)(A). But if a tipping pool includes *non*-tipped employees, such as managers, the tipping pool is invalid, and the employer forfeits its ability to take a tip credit. *See Shahriar v. Smith & Wollensky Rest. Grp.*, 659 F.3d 234, 240 (2d Cir. 2011).

    ii.    *Overtime Wages for Tipped Employees*

Under the FLSA, "a lawful overtime wage for tipped employees paid the minimum tip credit wage is calculated by multiplying the statutory minimum wage by one and one half and then subtracting the tip credit." *Inclan v. N.Y. Hosp. Grp.*, 95 F. Supp. 3d 490, 499 (S.D.N.Y. 2015). The statutory minimum wage is $7.25 per hour, 29 U.S.C § 206(a)(1)(C), and the tip credit employers may apply to overtime hours is $5.12, 29 U.S.C. § 203(m)(2)(A).[8] Under the FLSA,

---

[8] The tip credit (for both regular and overtime hours) is calculated by taking the minimum wage ($7.25) and subtracting $2.13—which is the minimum amount per hour that employers must pay *tipped* employees under federal law. *See* 29 U.S.C. § 203(m)(2)(A); *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 291 (S.D.N.Y. 2011) (citing *Ventura v. Bebo Foods, Inc.*, 738 F.Supp.2d 8, 16 n.1 (D.D.C. 2010)). This yields a tip credit of $5.12.

the current lawful overtime wage is therefore $5.76 per hour (($7.25 x 1.5) - $5.12). *See Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 291 (S.D.N.Y. 2011).

Here, Munoz alleges that he was paid the "prevailing tip credit minimum wage" for his scheduled hours. FAC ¶ 32. That means that he earned $10 per hour for his 43 scheduled hours per week. *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.3(b)(1).[9] This rate falls *above* the lawful federal overtime wage for tipped employees ($5.76), but *below* the lawful federal overtime rate of $10.88 ($7.25 x 1.5) for non-tipped employees. Munoz may therefore assert an overtime claim for his 3 scheduled overtime hours *only if* he plausibly alleges that Defendants utilized an invalid tip credit.

      iii.    *Munoz Does Not Plausibly Allege that Defendants Claimed an Invalid Tip Credit*

Munoz does not plausibly allege the existence of an invalid tip credit. The Complaint vaguely asserts that any tip credit used by Defendants was invalid because "Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding twenty percent (20%) of the total hours worked each workweek, (iii) implemented an invalid tip pooling scheme in which managers and non-tipped employees participated, (iv) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period, and (v) failed to accurately keep track of daily tips earned and maintain records thereof." FAC ¶ 35. These "[t]hreadbare recitals" and "conclusory statements"—devoid of any factual context—are insufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

---

[9] The Complaint merely alleges that Munoz was paid the "prevailing tip credit minimum wage," and does not include the precise dollar amount Munoz earned per hour. *See* FAC ¶ 32. However, New York state has a tip credit minimum wage of $10 per hour, and both parties assume in their briefing that Munoz was paid $10 per hour. *See* Def. Mem. 3; Opp. 5; Reply 4. Accordingly, the Court assumes Munoz earned $10 per hour.

Munoz makes much of one paragraph in the Complaint, where he references tasks completed by "Plaintiff, a subcollective of FLSA Collective Plaintiffs, and the Tipped Subclass" for "more than 20% of their working time." FAC ¶ 36. The tasks purportedly completed by Plaintiff and these unnamed others include "cleaning, rolling silverware, polishing glasses, setting tables, and preparing garnishes for drinks." FAC ¶ 36. But this one fleeting reference to tasks completed by an unknown group of people for an unknown period of time is insufficient to nudge Munoz's claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

The authority cited by Munoz is inapposite. In *Hart v. Crab Addison, Inc.*, No. 13-CV-6458, 2014 WL 5465480 (W.D.N.Y. Oct. 28, 2014), the district court found the allegations of the complaint were plausible "based on their factual detail." *Id.* at *6. No such factual detail exists here. The district court in *Agudelo v. E & D LLC*, No. 12-CV-0960, 2012 WL 6183677 (S.D.N.Y. Dec. 11, 2012), denied a motion for summary judgment after concluding there were disputed issues of fact. *Id.* at *6. But there are no issues of fact here. Indeed, there are not even factual allegations. Lastly, the Court finds Plaintiff's citations to conditional collective certification and default judgment opinions irrelevant and unpersuasive. *See* Opp. 8–9.

Because Munoz does not plausibly allege facts demonstrating that Defendants unlawfully claimed a tip credit, Munoz cannot allege that Defendants utilized an invalid tip credit, or that Defendants violated the FLSA by paying him $10 per hour. The motion to dismiss any claim based on this theory of liability is therefore granted.

### II.  Munoz Plausibly Alleges an FLSA Claim for Unpaid Tips

Munoz next argues that Defendants improperly retained his earned tips. Specifically, the Complaint alleges that his "weekly tip amounts did not vary," regardless of the workload or the number of customers he served. FAC ¶ 37; *see also* FAC ¶ 40. Munoz therefore contends that the "[m]anagers and owners improperly failed to pass on all gratuities." FAC ¶ 40.

Under the FLSA, "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C. § 203(m)(2)(B). Employers who violate Section 203(m)(2)(B) "shall be liable to the employee . . . in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).[10]

Munoz plausibly alleges facts suggesting Defendants improperly retained tips. The Complaint alleges that Munoz's "weekly tip amounts did not vary," and that, instead, he received "a flat payment in lieu of the actual gratuities earned." FAC ¶ 37. These allegations suggest that Defendants may have "ke[pt] tips received by" Munoz. 29 U.S.C. § 203(m)(2)(B). At this preliminary stage, these allegations are sufficient "to draw the reasonable inference that [Defendants are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. The improper tip retention claim may proceed.

### III. Munoz Lacks Standing to Maintain the NYLL Improper Wage Statement and Wage Notice Claims

Munoz contends that Defendants violated the Wage Theft Prevention Act ("WTPA"), an amendment to the NYLL, by failing to provide "proper wage statements" and "wage notice[s]." FAC ¶¶ 68, 69; *see Inclan*, 95 F. Supp. 3d at 500. Defendants argue that these claims should be dismissed because Munoz has not pled an injury resulting from any violation of these provisions.[11] *See* Def. Mem. 7–8. The Court agrees.

---

[10] The NYLL similarly provides that "[n]o employer. . . shall demand or accept . . . any part of the gratuities, received by an employee." N.Y. Lab. Law § 196-d. But again, apart from requesting that the Court decline to exercise supplemental jurisdiction, *see* Def. Mem. 8–9, Defendants do not move to dismiss or provide argument regarding this NYLL claim.

[11] Defendant only contests Munoz's standing to raise the WTPA claims. Because "a plaintiff must demonstrate standing for *each* claim he seeks to press," this analysis does not implicate Munoz's standing with respect to the other claims. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (emphasis added).

Section 195(1) of the WTPA requires employers to provide employees with a notice at the time of hiring containing "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; [and] allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances."  N.Y. Lab. Law § 195(1)(a).  Similarly, Section 195(3) requires employers to provide employees with certain wage statement information "with every payment of wages."  N.Y. Lab. Law § 195(3).  Employers who fail to comply with these provisions may be liable for damages.  *See* N.Y. Lab. Law § 198(1-b) (damages for failure to comply with Section 195(1)); N.Y. Lab. Law § 198(1-d) (damages for failure to comply with Section 195(3)).

The Complaint asserts—without *any* accompanying factual support—that Defendants had "a policy of not providing proper wage statements" and "proper wage notice[s]."  FAC ¶¶ 68, 69.  The Court is not obligated to accept the truth of these conclusory statements.  *See Iqbal*, 556 U.S. at 678.  But even if the Court were to accept these assertions as true, the Complaint does not plausibly allege that Munoz was injured by any lack of notice.  In *TransUnion LLC v. Ramirez*, the Supreme Court instructed that "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court."  141 S. Ct. 2190, 2205 (2021) (emphasis in original).  Munoz fails the *TransUnion* standard.  To start, the Complaint generically alleges that Defendants' policies "deprived employees of the ability to contest Defendants' calculations, allowed Defendants to hide their wrong-doing, and necessitated the current litigation."  FAC ¶ 46.  However, these vague allegations do not demonstrate how Munoz's "lack of notice resulted in an injury *greater than* Defendants' . . . overtime . . . violations."  *Pastrana v. Mr. Taco LLC*, No. 18-CV-09374, 2022 WL 16857111, at *7 (S.D.N.Y. Sept. 23, 2022) (emphasis added), *R&R adopted*, No. 18-CV-9374, 2022 WL 16857107 (S.D.N.Y. Nov. 10, 2022); *see also Francisco v. NY Tex Care, Inc.*, No. 19-CV-1649,

11

2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022) ("[T]he Supreme Court has made clear that a statutory violation alone, without a tangible injury or close parallel to a traditional cause of action, does not constitute an injury that can be recognized by the federal courts."). Similarly, although Munoz alleges that Defendants' "delayed payment caused [him] to struggle to timely pay bills," FAC ¶ 47, the Complaint does not "link[] [this] injury-in-fact to Defendants' failure to provide statutory notices under the NYLL." *Wang v. XBB, Inc.*, No. 18-CV-7341, 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022). Because Plaintiff has not alleged any injury stemming from Defendants' failure to provide wage notices or statements, he does not have standing to assert these claims.

*Imbarrato v. Banta Management Services*, a district court opinion authored by another judge of this Court, does not alter this conclusion. No. 18-CV-5422, 2020 WL 1330744 (S.D.N.Y. Mar. 20, 2020). Munoz cites *Imbarrato* for the proposition that "the WTPA was enacted to . . . protect an employee's concrete interest in being paid what he or she is owed." *Id.* at *8; *see* Opp. 10–11. But *Imbarrato* preceded the Supreme Court's *TransUnion* decision. Following *TransUnion*, "[c]ourts throughout the Second Circuit have . . . found no standing in cases . . . where Plaintiffs have not established any injury traceable to violation of the wage notice and statement requirements." *Ramirez v. Urion Constr. LLC*, No. 22-CV-3342, 2023 WL 3570639, at *8 (S.D.N.Y. May 19, 2023); *see also Huerta v. 101 N. Laundromat Inc.*, No. 21-CV-6127, 2023 WL 199699, at *2 (E.D.N.Y. Jan. 17, 2023) ("Courts in this district have held that plaintiffs lack standing under *TransUnion* to claim violations of the NYLL wage notice and wage statement provisions where the plaintiff cannot demonstrate a tangible injury as a result of the defendant's violation of these provisions.").

Because the allegations regarding Defendants' alleged "policies" are entirely conclusory and, in any event, Munoz lacks standing to contest these purported "policies," the WTPA claims

stemming from Defendants' failure to provide "proper wage statements" or "wage notice[s]" are dismissed.

### IV. Any Remaining State Law Claims May Proceed

Finally, Defendants request that the Court decline to exercise supplemental jurisdiction over any remaining state law claims. *See* Def. Mem. 8–9. Because, as described above, several of the FLSA claims may proceed and Defendants offer no other reason for dismissal, any remaining state law claims may proceed. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed *all* claims over which it has original jurisdiction." (emphasis added)).

### CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED IN PART and DENIED IN PART. Munoz plausibly states an FLSA overtime claim with respect to the 3.5 overtime hours that he allegedly worked off-the-clock each week and for which he was not paid. Munoz also plausibly states an FLSA claim for unpaid tips. Munoz does not plausibly allege an FLSA overtime claim for his 43 scheduled hours per week or for the NYLL wage statement or wage notice claims. Any remaining state law claims may proceed.

The Clerk of the Court is respectfully requested to terminate docket entry 25.

**SO ORDERED.**

Date: **August 22, 2023**  
**New York, NY**

_____  
**MARY KAY VYSKOCIL**  
**United States District Judge**