UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
 ------------------------------------------------------------- -------------X
**OSVALDO MUNOZ,** *on behalf of himself, FLSA Collective*
*Plaintiffs, and the Class,*

**Plaintiff,**          No. 22-CV-04038-MKV

**- against -**

**THE GROUP US MANAGEMENT LLC**
        d/b/a THE GROUP NYC,
**LA GRANDE BOUCHERIE LLC,**
        d/b/a LA GRANDE BOUCHERIE**,**
        d/b/a KAISEKI ROOM**,**
**OLIO RESTAURANTS LLC,**
        d/b/a OLIO E PIU**,**
**and EMIL STEFKOV,**

**Defendants.**

 ---------------------------------------------------------------------------X



**DEFENDANTS THE GROUP US MANAGEMENT LLC,  LA GRANDE BOUCHERIE LLC,
OLIO RESTAURANTS LLC AND EMIL STEFKOV'S MEMORANDUM OF LAW IN
<u>OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION</u>**

**GOLENBOCK EISEMAN
ASSOR BELL & PESKOE LLP**
*Attorneys for Defendants*
711 Third Avenue
New York, New York 10017
(212) 907-7300

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT .................................................................................................................... 2

I.  STANDARD ............................................................................................................. 2

II. PLAINTIFF AND OPT-IN PLAINTIFF HAVE NOT MET THEIR BURDEN
    OF SHOWING THEY ARE SIMILARLY SITUATED ...................................... 3

    a.  Plaintiff Improperly Attempts to Certify a Collective Action with
        Respect to Causes of Action that are Not Properly the Subject of this
        Motion ......................................................................................................... 4

    b.  Plaintiff and Opt-In Plaintiff Fail to Demonstrate that They are
        Similarly Situated to Employees of Restaurants Other Than the
        Employment Locations ................................................................................. 5

    c.  Plaintiff and Opt-In Plaintiff Fail to Demonstrate that They are
        Similarly Situated to Non-Tipped Employees of Defendants ......................... 11

    d.  The Temporal Scope of Plaintiff's Proposed Action is Overly Broad. ............... 13

III. PLAINTIFF'S PROPOSED NOTICE IS IMPROPER .................................................. 155

    a.  Gathering Social Security Numbers, Sending Multiple Notices, and
        Posting the Notice at Defendants' Place of Business Do Not Serve Any
        Further Purpose ........................................................................................... 15

    b.  The Proposed Notice Contains Improper Collective Scope and Biased
        Language, and Fails to List Defense Counsel ................................................. 16

IV. EQUITABLE TOLLING SHOULD BE DENIED ........................................................ 17

V.  CONCLUSION ........................................................................................................... 19

4850491.11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aleman-Valdivia v. Top Dog Plumbing & Heating Corp.*,
No. 20-CV-421 (LDH)(MMH), 2021 WL 4502479 (E.D.N.Y. Sept. 30, 2021)....................14

*Alvarado Balderramo v. Taxi Tours Inc.*,
No. 15-CV-2181(ER), 2017 WL 2533508 (S.D.N.Y. June 9, 2017)......................................18

*Apolinar v. R.J. 49 REST., LLC*,
No. 15-CV-8655 (KBF), 2016 WL 2903278 (S.D.N.Y. May 18, 2016)..............................6, 7

*Boice v. M+W U.S., Inc.*,
130 F. Supp. 3d 677 (N.D.N.Y. 2015)..............................................................................3, 10

*A.Q.C. ex rel. Castillo v. United States*,
656 F.3d 135 (2d Cir. 2011)...............................................................................................17

*Cohen v. Gerson Lehrman Grp., Inc.*,
686 F. Supp. 2d 317 (S.D.N.Y. 2010)....................................................................................3

*Colella v. City of New York*,
986 F. Supp. 2d 320 (S.D.N.Y. Dec. 5, 2013) .....................................................................13

*Delaney v. Geisha NYC, LLC*,
261 F.R.D. 55 (S.D.N.Y. 2009) ...........................................................................................15

*Eng-Hatcher v. Sprint Nextel Corp.*,
2009 U.S. Dist. LEXIS 127262 (S.D.N.Y. Nov. 13, 2009)....................................................10

*Fengler v. Crouse Health Found., Inc.*,
595 F. Supp. 2d 189 (N.D.N.Y 2009)...................................................................................15

*Garcia v. Spectrum of Creations Inc.*,
102 F. Supp. 3d 541 (S.D.N.Y. 2015)..................................................................................16

*Guevara v. Fine & Rare Operations LLC*,
No. 20-CV-5330 (BCM), 2022 WL 103376 (S.D.N.Y. Jan. 10, 2022)....................................6

*Guo v. Tommy's Sushi Inc.*,
No. 14-CV-3964 (PAE), 2014 WL 5314822 (S.D.N.Y. Oct. 16, 2014)..................................17

*Hintergerger v. Catholic Health Sys.*,
No. 08-CV-380S, 2009 WL 3464134 (W.D.N.Y. Oct. 21, 2009) ...........................................18

ii

*Hoffmann-La Roche, Inc. v. Sperling*,
  493 U.S. 165 (1989)........................................................................................................2, 16

*Huer Huang v. Shanghai City Corp.*,
  459 F. Supp. 3d 580 (S.D.N.Y. 2020)......................................................................................7

*Jackson v. ProAmpac LLC*,
  No. 22-CV-03120 (NSR), 2023 WL 6215324 (S.D.N.Y. Sept. 25, 2023) ............................17

*Jenkins v. TJX Cos.*,
  853 F. Supp. 2d 317 (E.D.N.Y. 2012) ......................................................................................2

*Khan v Airport Mgt. Services, LLC*,
  10-CV-7735(NRB), 2011 WL 5597371 (S.D.N.Y. Nov. 16, 2011)..........................................2

*Knox v. John Varvatos Enterprises Inc.*,
  282 F. Supp. 3d 644 (S.D.N.Y. 2017)..............................................................................14, 16

*Laroque v. Domino's Pizza, LLC*,
  557 F. Supp. 2d 346 (E.D.N.Y. 2008) ..................................................................................3, 9

*Lopez v. Acme Am. Env't Co.*,
  No. 12-CV-511 (WHP), 2012 WL 6062501 (S.D.N.Y. Dec. 6, 2012)......................................9

*Mark v. Gawker Media LLC*,
  No. 13-CV-4347(AJN), 2014 WL 5557489 (S.D.N.Y. Nov. 3, 2004)....................................17

*Mata v. Foodbridge LLC*,
  No. 14 CIV. 8754 ER, 2015 WL 3457293 (S.D.N.Y. June 1, 2015)......................................12

*Mei Rong Du v. Dingxiang Inc.*,
  No. 19-CV-11924-(JPO)(BCM), 2020 WL 7404984 (S.D.N.Y. Dec. 17, 2020) ....................6

*Mendoza v. Casa De Cambio Delgado, Inc.*,
  07-CV-2579 (HB), 2008 WL 938584 (S.D.N.Y. Apr. 7, 2008) ................................................2

*Michael v. Bloomberg L.P.*,
  No. 14-CV-2657 (TPG), 2015 WL 1810157 (S.D.N.Y., Apr. 17, 2015) ................................15

*Mohamed v. Sophie's Cuban Cuisine Inc.*,
  No. 14-CV-3099 (TPG), 2015 WL 5563206 (S.D.N.Y. Sept. 21, 2015) ................................15

*Morales v. Plantworks, Inc.*,
  No. 05-CV-2349, 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006)..................................................3

*Moses v. Griffin Indus., LLC*,
  No. 18-CV-1200-(ALC)(OTW), 2020 WL 5813737 (S.D.N.Y. Sept. 30, 2020)....................15

iii

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010)................................................................2, 3

*Phillips v. Generations Family Health Ctr.*,
   723 F.3d 144 (2d Cir. 2013)..................................................................17

*Prizmic v. Armour, Inc.*,
   05–CV–2503(DLI)(MDG), 2006 WL 1662614 (E.D.N.Y. June 12, 2006) ...........................2

*Qiang Lu v. Purple Sushi, Inc.*,
   447 F. Supp. 3d 89 (S.D.N.Y. 2020)........................................................11

*Ramos v. PJJK Rest. Corp.*,
   No. 15-CV-5672(PKC), 2016 WL 1106373 (S.D.N.Y. Mar. 10, 2016).................................18

*Rodriguez v. 4 Caminos Mexican Rest., Corp.*,
   No. 20-CV-02975-KAM-JRC, 2022 WL 20540312 (E.D.N.Y. Jan. 13, 2022) .......................4

*Sanchez v. JMP Ventures, L.L.C.*
   No. 13-CV-7264 (KBF), 2014 WL 465542 (S.D.N.Y. Jan 27, 2014)...........................4, 10, 12

*Severtson v. Phillips Beverage Co.*,
   137 F.R.D. 264 (D. Minn. 1991)...............................................................2

*Sharma v. Burberry Ltd.*,
   52 F. Supp. 3d 443 (E.D.N.Y. 2014) ........................................................9

*Trinidad v. Pret A Manger (USA) Ltd.*,
   962 F. Supp. 2d 545 (S.D.N.Y. 2013)........................................................13

*Urresta v. MBJ Cafeteria Corp.*,
   No. 10-CV-8277 (RWS), 2011 WL 4962969 (S.D.N.Y. Oct. 18, 2011).................................4

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
   767 F. Supp. 2d 445 (S.D.N.Y. 2011)........................................................14

*Zhao v. Surge Priv. Equity LLC*,
   No. 22-CV-7314 (KPF), 2023 WL 3477591 (S.D.N.Y. May 16, 2023) ...............................18

*Zheng v. Good Fortune Supermarket Group (USA), Inc.*,
   13–CV–60 (ILG), 2013 WL 5132023 (E.D.N.Y. Sept. 12, 2013).........................................10

## Statutes

29 US.C. §§201 *et seq.*.................................................................... *passim*

29 U.S.C. § 255(a) ..............................................................................13

iv

## PRELIMINARY STATEMENT

Defendants The Group US Management LLC d/b/a The Group NYC ("The Group"), La Grande Boucherie LLC d/b/a La Grande Boucherie d/b/a Kaiseki Room ("La Grande Boucherie"), Olio Restaurants LLC d/b/a Olio E Piu ("Olio e Piu"), and Emil Stefkov ("Stefkov") (collectively, "Defendants"), by and through their attorneys, Golenbock Eiseman Assor Bell & Peskoe, LLP, hereby submit this memorandum of law in opposition to Plaintiff Osvaldo Munoz's (hereinafter referred to as "Munoz" or "Plaintiff") motion for conditional certification of a collective action ("Mot.") pursuant to the Fair Labor Standards Act, 29 US.C. §§201 et seq. (the "FLSA").  Munoz is joined in his motion by opt-in plaintiff Cristobal Ramirez (hereinafter referred to as "Ramirez" or "Opt-In-Plaintiff").[1]

Plaintiff's instant motion should be denied because it presents no basis upon which this Court could find that Munoz and Ramirez are similarly situated to the overly broad proposed collective members in any respect.  In the event the Court finds that conditional certification is appropriate, the scope of a collective action should be limited to Tipped Front-of-House Employees (as defined herein) who worked at the restaurant locations where Munoz and Ramirez were actually employed within the two to three years prior to notice being distributed.  Plaintiff has not met his burden of showing that employees at other locations or non-tipped or back-of-house employees were subject to the same alleged policies.

For all of these reasons, and for those more fully described below, Plaintiff's motion for conditional certification should be denied or severely limited in scope and the contents of the notice to potential opt-in members should be revised.

---

[1] Plaintiff styled the caption of his conditional certification motion to include Ramirez as a Named Plaintiff; however, Plaintiff's request to amend the Complaint to change the caption, among other substantive amendments, has not been decided. Thus, for purposes of this motion, Ramirez should be treated as an Opt-In Plaintiff based on his Consent to Sue, filed on June 29, 2023.

## ARGUMENT

### I.    STANDARD

Section 216(b) of the FLSA authorizes a plaintiff seeking relief to bring a "collective action" on behalf of similarly situated persons. 29 U.S.C. § 216(b). A district court has discretion, in appropriate cases, to facilitate notice to potential plaintiffs in class actions brought under § 216(b). *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169, 171 (1989). However, a collective action should proceed only where it will facilitate a court's ability to resolve multiple claims efficiently in one proceeding. *See id.* at 170; *see also Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266 (D. Minn. 1991). For that reason, section 216(b) provides that only similarly situated employees may utilize the opt-in procedure.

Courts in the Second Circuit currently utilize a two-tiered approach when deciding whether an FLSA suit may proceed as a collective action. *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010); *Jenkins v. TJX Cos.*, 853 F. Supp. 2d 317, 320 (E.D.N.Y. 2012); *Khan v Airport Mgt. Services, LLC*, 10-CV-7735(NRB), 2011 WL 5597371, at *1 (S.D.N.Y. Nov. 16, 2011). Although the plaintiff's burden at the initial stage of certification "is not onerous," the plaintiff "must provide actual evidence of a factual nexus between his situation and those that he claims are similarly situated rather than mere conclusory allegations." *Prizmic v. Armour, Inc.*, 05–CV–2503(DLI)(MDG), 2006 WL 1662614, at *3 (E.D.N.Y. June 12, 2006) (citations omitted). "Absent such a showing, an employer may be 'unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense.'" *Id*. at *7 (citations omitted); *see also Mendoza v. Casa De Cambio Delgado, Inc.*, 07-CV-2579 (HB), 2008 WL 938584, at *1 (S.D.N.Y. Apr. 7, 2008) ("conclusory allegations or lack of a nexus with the putative class will prevent the case from moving forward as a collective action.").

2

"[A]lthough the burden on the plaintiff at this preliminary stage is modest, 'it is not non-existent.'" *Boice v. M+W U.S., Inc.*, 130 F. Supp. 3d 677, 694 (N.D.N.Y. 2015) (quoting *Khan, supra*, at *5).

## II.    PLAINTIFF AND OPT-IN PLAINTIFF HAVE NOT MET THEIR BURDEN OF SHOWING THEY ARE SIMILARLY SITUATED

The FLSA does not define "similarly situated"; however, in assessing whether the potential plaintiff has met his or her burden, "district courts in this circuit look to the (1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against notification to the class." *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 352 (E.D.N.Y. 2008) (internal quotation marks and additional citations omitted). A plaintiff's burden at the first step may be satisfied with "substantial allegations" of a factual nexus between named plaintiffs and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation. *See Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 326 (S.D.N.Y. 2010) (quoting *Ayers v. SGS Control Servs., Inc.*, 03–CV–9078 (RMB)(RLE), 2004 WL 2978296, at *5 (S.D.N.Y. Dec. 21, 2004)). As the Second Circuit has explained, "[t]he 'modest factual showing' cannot be satisfied simply by 'unsupported assertions.'" *Myers*, 624 F.3d at 555 (quoting *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1567 (11th Cir.1991)); *see Morales v. Plantworks, Inc.*, No. 05-CV-2349, 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) (stating that "conclusory allegations are not enough" to meet the "modest factual showing" at the first stage of collective action certification).

Here, neither Plaintiff Munoz nor Opt-In-Plaintiff Ramirez have made the modest factual showing that they are similarly situated to the putative opt-in members because the Amended Complaint, moving papers, and declarations contain only vague and generic allegations that gloss

3

over the clear disparate employment settings of Munoz, Ramirez, and the putative opt-in members. *See Rodriguez v. 4 Caminos Mexican Rest., Corp.*, No. 20-CV-02975-KAM-JRC, 2022 WL 20540312, at *9 (E.D.N.Y. Jan. 13, 2022) (denying conditional certification when only allegations binding plaintiff to other employees is allegation of underpayment). The baseless and conclusory allegations and hearsay contained in Plaintiff and Opt-In Plaintiff's declarations are not sufficient. *Urresta v. MBJ Cafeteria Corp.*, No. 10-CV-8277 (RWS), 2011 WL 4962969, at *4 (S.D.N.Y. Oct. 18, 2011); *see also Sanchez v. JMP Ventures, L.L.C.* No. 13-CV-7264 (KBF), 2014 WL 465542, at *2 (S.D.N.Y. Jan 27, 2014).

### a.  Plaintiff Improperly Attempts to Certify a Collective Action with Respect to Causes of Action that are Not Properly the Subject of this Motion

Plaintiff's motion and supporting declarations assert facts and arguments regarding Plaintiff's claim that he was paid at an invalid tip credit rate on account of allegedly spending more than 20% of his time performing non-tipped "side work" and on account of allegedly *never* receiving notice of a tip credit. Plaintiff should not be permitted to seek conditional certification on this claim because it was dismissed pursuant to the Memorandum and Order, dated August 22, 2023, granting in part and denying in part Defendants' motion to Dismiss the Amended Complaint (the "MTD Order"). Dkt. No. 33.  Plaintiff's Motion for Reconsideration of the MTD Order, Dkt. No. 34, has not been decided as of the filing of the instant motion, nor has Plaintiff's pending request to further amend the complaint. Thus, Plaintiff has no basis for certifying a collective action with respect to the invalid tip credits claims, which cannot proceed on an individual basis.

Similarly, Plaintiff's motion and supporting declarations contain allegations and arguments that Plaintiff was provided with an inaccurate rate of pay notice and inaccurate wage statements in violation of the Wage Theft Prevention Act ("WTPA").  These claims were also dismissed

pursuant to the MTD Order and, in any event, are exclusively New York Labor Law ("NYLL") claims which, standing alone, are not ripe for conditional certification under the FLSA.

Accordingly, the only claims for which Plaintiff may plausibly seek conditional certification are Plaintiff's off-the-clock overtime pay claims, and Plaintiff's improper tip retention claims. Any facts or assertions related to the invalid tip credit claim or the NYLL claims should be disregarded in assessing whether Plaintiff has made an appropriate showing that he and members of the purported collective were subject to a common policy or scheme that violated the FLSA.

    **b.**    **Plaintiff and Opt-In Plaintiff Fail to Demonstrate that They are Similarly Situated to Employees of Restaurants Other Than the Employment Locations**

Plaintiff Munoz was employed as a busser from February 2021 to December 2021 at La Grande Boucherie, located at 145 West 53rd Street, New York, NY 10019. Dkt. No. 60 at ¶ 1 (Munoz Decl.), and Opt-In Plaintiff Ramirez was employed as a runner from June 2022 to March 2023 at Petite Boucherie Bistro, located at 14 Christopher Street, New York, NY 10014 (hereinafter, "Petite Boucherie" and together with La Grande Boucherie, the "Employment Locations"). Dkt. No. 61 at ¶ 1 ("Ramirez Decl."). Notwithstanding their singular respective employment locations, Plaintiff's motion argues that employees of seven (7) separate restaurant locations should be included in the collective: La Grande Boucherie; Petite Boucherie; Kaiseki Room, located at 145 West 53rd Street, New York, NY 10019; Boucherie Union Square, located at 225 Park Avenue South, New York, NY 10003; Boucherie West Village, located at 99 7th Avenue South, New York, NY 10014; Omakase Room, located at 14 Christopher Street, New York, NY 10014; and Olio E Piu, located 3 Greenwich Avenue, New York, NY 10014 (collectively, "The Group Restaurants").

4850491.11

Plaintiff contends that The Group Restaurants operate as a single integrated enterprise, which purportedly forms the basis of Plaintiff's contention that *all* non-exempt employees of *all* The Group Restaurants were subject to a common policy or practice that violated the FLSA. Plaintiff's and Opt-In Plaintiff's allegations in this regard fall far short of meeting their burden.

When assessing whether distinct entities should be treated as a single employer for FLSA purposes, courts considers "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Mei Rong Du v. Dingxiang Inc.*, No. 19-CV-11924-(JPO)(BCM), 2020 WL 7404984, at *7 (S.D.N.Y. Dec. 17, 2020) (internal quotations and citations omitted). Where, as here, a plaintiff invokes the single integrated enterprise doctrine to seek conditional certification of a collective, courts generally require that plaintiff "provide[ ] sufficient factual information to support [his] allegation that Defendants are a single integrated enterprise" and "show that each restaurant had employees that were 'similarly situated' with regard to the allegedly unlawful [] policies." *Id.* "*Both showings are required*; that is, even where it is clear that multiple business locations share common ownership and management, plaintiffs must adduce enough evidence to support an inference of a common wage policy across all locations before a multi-location collective may be certified." *Guevara v. Fine & Rare Operations LLC*, No. 20-CV-5330 (BCM), 2022 WL 103376, at *4 (S.D.N.Y. Jan. 10, 2022) (citations omitted) (emphasis supplied). Plaintiff has failed to provide sufficient facts or otherwise show that the factors warrant a finding of a single integrated enterprise or that employees of all The Group Restaurants were all subject to the same policies. *See Apolinar v. R.J. 49 REST., LLC*, No. 15-CV-8655 (KBF), 2016 WL 2903278, at *4 (S.D.N.Y. May 18, 2016) (finding that the single integrated enterprise theory not applicable after noting plaintiffs had in

6

large part relied "on a number of conclusory allegations that merely plead the presence of the relevant factors necessary to establish common control. . . ").

A shared website, the same name for establishments, or even joint marketing do not provide sufficient evidence of interrelated operations or centralized control or management. Courts recognize "[i]t is not uncommon for two or more businesses that are run independently and manage their labor relations independently to use a single website or a common name for marketing purposes." *Huer Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 588 (S.D.N.Y. 2020) (collecting cases holding that use of single website or common marketing did not establish single integrated enterprise); *see also Apolinar*, 2016 WL 2903278, at *4 (limiting certification to one location where plaintiff actually worked, when there were seven locations doing business under the name "Toasties," five of which were listed on the same Toasties website home page which described the business as "a family owned and operated New York Gourmet Delicatessen").

Plaintiff has not shown common management and control of labor relations. Plaintiff has not put forth any evidence to support his allegation that Individual Defendant Stefkov controlled labor relations or the hiring and firing of employees, nor is there any evidence of common management between the restaurants. Munoz's declaration attempts to remedy this evidentiary deficiency by stating that he observed that managers, including Individual Defendant Stefkov, would "transfer and manage other locations every week," without any other factual support. Munoz Decl. ¶ 6. Plaintiff has not set forth a sufficient factual basis for this conclusory assertion and his declaration does not comport with reality. Individual Defendant Stefkov was not a manager at La Grande Boucherie. Stefkov does not personally manage any of The Group Restaurants on a weekly basis and is not involved in the day to day management of any Tipped Front of House Employees.

Further, Plaintiff's allegations of shared "supplies and ingredients" carry no weight. Plaintiff provides no examples of the supplies that were allegedly shared or which ingredients he was alleged required to deliver.  La Grande Boucherie, Petite Boucherie and two other locations serve French cuisine.  Kaiseki Room and Omakase Room specialize in sushi and other Japanese dishes. Olio E Piu specializes in Italian cuisine. The restaurants utilize different techniques and ingredient profiles and each location provides patrons with a unique dining experience.  It would be impossible to operate these restaurants with overlapping staff, cookie-cutter décor, or some common organizational scheme.

Moreover, there are no allegations that employees were shared or transferred among The Group Restaurants. Plaintiff Munoz does not allege that he performed any work at other locations. Although Munoz claims to have been "sent to the Greenwich location and other Boucherie locations to pick up various supplies[,]" Munoz Decl. ¶ 4,  he does not elaborate on the supplies he was allegedly required to pick up, nor does he claim to have experienced or observed any pay policies or practices at any other location, let alone any cognizable FLSA violations.  The same can be said for the four other bussers identified by Munoz – all of whom were employed at La Grande Boucherie and all of whom fail to allege that any violations of the FLSA occurred at the other locations or during alleged trips to transfer supplies. Nor are there any allegations that the identified bussers were employed or worked for the benefit of The Group Restaurants other than La Grande Boucherie.[2] The motion papers and declarations raise allegations only as to the Employment Locations.

---

[2]  In many cases where a court finds that a single integrated enterprise exists, the restaurants in question "share" staff by transferring an individual employee from one location to perform his or her same role at another location (*i.e.*, working as a cook in two different locations).  There are no claims that any of The Group Restaurants shared staff in this manner.  Plaintiff, Opt-In Plaintiff and all employees identified allege only that they performed work for the benefit of the single location where they were employed.

Similarly, Munoz and the other bussers identified were not employed by the Kaiseki Room and Munoz fails to allege facts sufficient to show that the cleaning and prep work allegedly performed in the Kaiseki Room's space was performed for the benefit of the Kaiseki Room. Noticeably lacking from Munoz's declaration is any allegation that any manager directed him to perform work for the benefit of the Kaiseki Room. To the contrary, any side work performed by Munoz and the identified bussers was done solely for the benefit of their employer, La Grande Boucherie. Further, the simple fact that two establishments share an address does not create a single integrated enterprise. *See Lopez v. Acme Am. Env't Co.*, No. 12-CV-511 (WHP), 2012 WL 6062501, at *5 (S.D.N.Y. Dec. 6, 2012).

Opt-In-Plaintiff Ramirez's declaration suffers from the same deficiencies. Ramirez does not allege that he or any other employee he knew performed work in, or for the benefit of, the Omakase Room. Ramirez states that he and the other two runners identified were sent to other locations to pick up supplies, yet there is nothing in his declaration claiming that they were not properly paid for all work performed, or that they witnessed improper pay practices at the other locations. Similarly, there is no evidence that Petite Boucherie's runners were acting for the benefit of the other restaurants when Petite Boucherie's management sent them on supply trips, to the extent such supply trips happened at all.

Plaintiff and Opt-In-Plaintiff provide no details about the management, policies and pay practices of any of The Group Restaurants, other than the establishments in which they worked, and fail to put forward any evidence – beyond the general assertions that The Group Restaurants have the same Human Resource Department and employees receive the same handbook[3] – that the alleged FLSA violations occurred at the locations where they were not employed. Munoz and

---

[3] Notably, Plaintiff does not allege there is anything improper or legally deficient in the handbook.

Ramirez fail to explain if and how either of them could plausibly be aware that employees at The Group Restaurants other than the Employment Locations were subject to the same allegedly unlawful pay policy, despite only having worked at the Employment Locations, and only having spoken with other employees in their respective work locations. *See Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 458 (E.D.N.Y. 2014) (general assertion that it was routine for employees to work off-the-clock "in every store" are too conclusory); *Laroque*, 557 F. Supp. 2d at 356 (conditionally certifying a group of employees at one pizza store, but declining to include employees at five other stores in the same chain where plaintiffs made only "generalized allegations of wrongdoing" regarding one of the stores, supported by hearsay statements of questionable reliability); *Boice*, 130 F. Supp. 3d at 696 (finding "that plaintiff has failed to demonstrate that he and the potential class—all structural, architectural, process, and electrical designers at all of defendants' offices" were similarly situated where plaintiff failed to "provide any detail regarding the conversations he had with these coworkers, such as the names or positions of these designers, the dates of these conversations, or any details surrounding the conversations").

Plaintiff and Opt-In Plaintiff merely put forth "list[s] of generalized allegations that have been molded into a declaration" which are "precisely the kind of unsupported assertions and conclusory allegations that courts in [the Southern] District have found to be insufficient to conditionally certify a class under 216(b)." *Sanchez*, 2014 WL 465542, at *2; *see Eng-Hatcher v. Sprint Nextel Corp.,* 2009 U.S. Dist. LEXIS 127262 (S.D.N.Y. Nov. 13, 2009) (finding that the single plaintiff's allegations that defendant's "de facto policy" caused dozens or hundreds of violations – while failing to provide any supporting details or corroborating affidavits – were insufficient to support the standard for conditional certification, and that plaintiff's claim that other employees told her they did not receive compensation for overtime is "anecdotal hearsay"

insufficient to show a common policy or practice); *Zheng v. Good Fortune Supermarket Group (USA), Inc.*, 13–CV–60 (ILG), 2013 WL 5132023, at *2 (E.D.N.Y. Sept. 12, 2013) (rejecting as insufficient plaintiff's own declaration which contained only generalized statements). Accordingly, Plaintiff and Opt-In Plaintiff have failed to establish a common policy, practice, or scheme that violates the FLSA that extends to all of The Group Restaurants.

### c. Plaintiff and Opt-In Plaintiff Fail to Demonstrate that They are Similarly Situated to Non-Tipped Employees of Defendants.

Plaintiff's motion seeks conditional certification of a collective encompassing "all non-exempt front-of-house and back-of-house employees" at the seven restaurant locations described above. Dkt. 57-1. The proposed collective includes tipped as well as non-tipped employees. The tipped employee group is comprised of runners, bussers, barbacks, and bartenders (the "Tipped Front-of-House Employees"). *Id.* The non-tipped employee group is comprised of porters, hosts (both front-of-house positions) and food preparers, cooks, dishwashers, and delivery persons (back-of-house positions). Plaintiff and Opt-In-Plaintiff have not met the burden necessary to establish that they are similarly situated to non-tipped employees at any restaurant location. At best, Munoz and Ramirez are similarly situated only with Tipped Front-of-House Employees at the restaurant locations where Munoz and Ramirez were actually employed. Expanding the scope of this action to all "all non-exempt front-of-house and back-of-house employees" would be extremely onerous and improper (if not impossible) as it would add potential opt-in members not touched by the Plaintiff's claims.

Plaintiff has not submitted any evidence that he or Opt-In Plaintiff Ramirez, or any of the other bussers and runners identified, are similarly situated to non-tipped front-of-house employees such as porters and hosts or back-of-house employees (all non-tipped) such as cooks, food preparers, and delivery persons. *See Qiang Lu v. Purple Sushi, Inc.*, 447 F. Supp. 3d 89, 95-96

(S.D.N.Y. 2020) (denying certification as to categories of employees where plaintiff failed to provide sufficient details about the positions, hours, and pay of those categories of employees, and collecting cases deciding same).

Plaintiff cannot rely on the untenable claim that "all other workers employed by Defendants suffered unpaid wages," Mot. at 6, without regard to position held or location of employment. *See Mata v. Foodbridge LLC*, No. 14 CIV. 8754 ER, 2015 WL 3457293, at \*3 (S.D.N.Y. June 1, 2015) (denying conditional certification and noting plaintiff "provides no factual support demonstrating knowledge of a common scheme impacting the diverse array of employees" in at least 10 distinct positions listed in plaintiff's declaration). The attempt to generate evidence of a common alleged violation without any details surrounding the supposed interactions is unavailing – as courts have held, "information regarding where or when these observations or conversations occurred . . . is critical in order for the Court to determine the appropriate scope of the proposed class and notice process." *Id.* at \*4 (citations omitted); *see Sanchez*, 2014 WL 465542, at \*2 (denying conditional certification and disregarding portions of plaintiff's declaration that fail to "provide any detail as to a single such observation or conversation"). Here, Munoz's and Ramirez's declarations in support of the motion each contain the same boiler plate generic allegations repeated throughout the Amended Complaint regarding alleged time shaving, excessive side work, and an improper tip pool. Neither declaration identifies who allegedly instructed Munoz or Ramirez to perform the alleged off-the-clock work or side work, and many of the allegations are simply implausible (for example, large numbers of employees across locations being required to do an hour or more of off-the-clock work per shift on a regular basis). Regarding Plaintiff's improper tip retention claims, non-tipped employees are not part of the tip pool, and therefore would not have cognizable claims for unpaid wages due to alleged illegally retained gratuities. As for Plaintiff's time shaving

12

claims, neither Munoz nor Ramirez make any claims that employees in non-tipped positions performed pre- or post-shift work. Instead, only bussers and runners are identified as allegedly doing work outside their regularly scheduled shifts and Munoz and Ramirez only allegedly spoke with bussers and runners at the Employment Locations. All of these differences, acknowledged by Plaintiff, bely his claims that the proposed collective, whether tipped or non-tipped, front-of-house or back-of-house, was somehow subject to common wage and hour policies.

There is simply no evidence to support Plaintiff's contention that he or Opt-In Plaintiff are similarly situated to any non-tipped employees working at any restaurant location. Moreover, Plaintiff's counsel confirmed during the May 14, 2024 status conference held before Hon. Mary Kay Vyskocil that the collective Plaintiff sought to certify included only Tipped Front of House employees. As such, to the extent collective certification is granted, the scope of the collective must be limited only to Tipped Front-Of-House Employees at the Employment Locations.

### d.    The Temporal Scope of Plaintiff's Proposed Action is Overly Broad.

Additionally, the temporal scope of Plaintiff's proposed collective action is overly broad and seeks an excessive collective of potential opt-in members that worked "at any time between May 17, 2016, and the present." Dkt. 59-1. The statute of limitations for claims under the FLSA is two years. 29 U.S.C. § 255(a). This period is extended only upon a determination the employer's violation was willful. "For an employer's actions to be willful, the employer must have 'either known or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA.'" *Id.* (quoting *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677 (1988)) (internal brackets omitted). "Plaintiffs bear the burden of proof on the issue of willfulness." *Colella v. City of New York,* 986 F. Supp. 2d 320, 336 (S.D.N.Y. Dec. 5, 2013) (citing *Young v. Cooper Cameron Corp.,* 586 F.3d 201, 207 (2d Cir.2009)). Here, Plaintiff has not set forth any factual or evidentiary bases to support his allegations of willfulness.

Any argument that an extended time period is warranted because of Plaintiff's NYLL claims, which have a six-year limitations period, is inapposite. The motion before the Court is only for collective certification of an FLSA opt-in collective, and thus consideration of state law statute of limitations in fashioning a notice period is not appropriate. *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 564 (S.D.N.Y. 2013) (declining to approve a six-year notice period because the "motion before the Court is only for collective certification of FLSA opt-in class, and not class certification under Fed. R. Civ. P. 23 for claims under the NYLL."). Because NYLL claims are subject to Rule 23's more stringent class certification requirements, applying a six-year notice period for the FLSA claims is not warranted at this juncture. *Id*. Further, because Rule 23 claims are opt-out and not opt-in, "those class members [with claims under the NYLL] would face no risk of claim lapse. . . ." *Aleman-Valdivia v. Top Dog Plumbing & Heating Corp.*, No. 20-CV-421 (LDH)(MMH), 2021 WL 4502479, at *6 (E.D.N.Y. Sept. 30, 2021) (quoting *Gurrieri v. Cty. of Nassau*, No. 16-CV-6983(ADS)(SIL), 2019 WL 2233830, at *8 (E.D.N.Y. May 23, 2019)).

Additionally, the notice period should not extend from the date of the filing of the action, but rather from the date of the distribution of the Notice. *See Knox v. John Varvatos Enterprises Inc.*, 282 F. Supp. 3d 644, 663 (S.D.N.Y. 2017) ("[N]otice will be sent only to individuals who were last employed by JV within three years prior to the date the notices are mailed."). "Because the statute of limitations runs for each individual plaintiff until he consents to join the action, courts generally permit plaintiffs to send notice to those employed during the [two or] three year period prior to the date of the Order or to the mailing of the notice." *Whitehorn v. Wolfgang's Steakhouse, Inc.,* 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011).

Therefore, in the event the Court determines that conditional certification is appropriate, the FLSA collective should be limited to employees who worked for Defendants within the two to three years, at most, prior to distribution of the Notice.

## III.    PLAINTIFF'S PROPOSED NOTICE IS IMPROPER

In the event the Court grants Plaintiff's motion, Defendants request leave to file a substitute proposed notice that cures the deficiencies discussed herein and appropriately limit the scope of the Notice.

### a.    Gathering Social Security Numbers, Sending Multiple Notices, and Posting the Notice at Defendants' Place of Business Do Not Serve Any Further Purpose

The court should also deny Plaintiff's request for the inherently private information he requests from the putative class members, including their social security numbers. Courts in this Circuit, and elsewhere, have held that plaintiffs have "no need for [such] inherently private information . . . including e-mail addresses, telephone numbers, social security numbers, and dates of birth." *Fengler v. Crouse Health Found., Inc.*, 595 F. Supp. 2d 189, 198 (N.D.N.Y 2009); *see also, Mohamed v. Sophie's Cuban Cuisine Inc.,* No. 14-CV-3099 (TPG), 2015 WL 5563206, at *6 (S.D.N.Y. Sept. 21, 2015) (stating that defendants need not produce social security numbers, email addresses, dates of birth, or telephone numbers); *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 60 (S.D.N.Y. 2009).

To the extent Plaintiff's request to distribute the Notice "multiple times" is a request for reminder notices to be issued, the Court should deny Plaintiff's request. Plaintiff has not demonstrated any reason to send reminder notices, has not provided the proposed contents of any such proposed subsequent notice, and has not proposed any schedule for dissemination of a reminder notice. *See Moses v. Griffin Indus., LLC*, No. 18-CV-1200-(ALC)(OTW), 2020 WL 5813737, at *6 (S.D.N.Y. Sept. 30, 2020).

Similarly, the Court should deny Plaintiff's request to post the proposed Notice at Defendants' place of business during regular business hours. The only employees who will be reached by such notice will be current employees, who will receive the same notice by mail (and other means) and those not included in the proposed collective, potentially causing confusion and disruption in the workplace. Courts have recognized that posting such notice in the workplace is not always an effective or even appropriate way to reach similarly situated employees, and that such a posting may have negative effects on the workplace. *See e.g., Michael v. Bloomberg L.P.,* No. 14-CV-2657 (TPG), 2015 WL 1810157, at *4 (S.D.N.Y., Apr. 17, 2015) (posting of notice in the workplace not appropriate "absent a showing that a significant number of notices were returned as undeliverable."). Courts have further noted the "potential disruption that can occur in the employer-employee relationship when an employer is required to post a notice in the workplace announcing that one or more employees have accused it of violating the law." *Knox*, 282 F. Supp. 3d at 667–68. Here, Plaintiff's motion does not raise any argument or provide any basis for believing posting is necessary for effective notice. *See id.* (denying plaintiffs' request to post notice in the workspace absent a belief that other methods may not be successful in reaching potential opt-in members); *Garcia v. Spectrum of Creations Inc.*, 102 F. Supp. 3d 541, 551 (S.D.N.Y. 2015).

### b.    The Proposed Notice Contains Improper Collective Scope and Biased Language, and Fails to List Defense Counsel.

As discussed above, the scope of the conditional certification is, at best, limited to Tipped Front-Of-House Employees who were employed at La Grande Boucherie and Petite Boucherie in the two to three years prior to notice distribution. Therefore, the Notice must only be addressed to servers, runners, bussers, barbacks, and bartenders at those two locations, and the temporal limit should be amended to "any time between [*2* or *3 Years Prior to Notice Mailing Date*], and the present." Distribution of the Notice to any other individuals would only cause confusion and

would not serve the purpose of notifying potential plaintiffs of their eligibility to join this lawsuit. The proposed lookback period extends to "May 17, 2016," far beyond the permissible two to three year statute of limitations under the FLSA.

Additionally, the language in the proposed Notice is unnecessarily biased and must be modified to reflect judicial neutrality. *Hoffmann-La Roche*, 493 U.S. at 174. First, the Notice contains several improper references. The Notice has two references to the NYLL, which confuse the reader and conflate issues that are not applicable to an FLSA collective action. Also, as explained herein, Plaintiff's NYLL claims are not currently before the Court. Further, any reference to an "invalid tip credit" should be removed from the Notice since the Court has already determined that Plaintiff cannot bring tip credit claims on an individual basis.

Second, the Notice highlights the damages available but fails to inform potential opt-in members that they may potentially recover nothing.

Third, the Notice employs potentially misleading and inflammatory language to describe Plaintiff's claims. In addition to requesting that references to the "illegality" of the alleged conduct be removed, Defendants request that they be granted an opportunity to insert a neutral statement regarding their defenses.

Finally, any notice distributed should include contact information for Defendants' counsel. *See Guo v. Tommy's Sushi Inc.,* No. 14-CV-3964 (PAE), 2014 WL 5314822, at *4 (S.D.N.Y. Oct. 16, 2014) (provision of defense counsel's contact information is "routine" as it "is necessary to afford employees the opportunity to communicate with defense counsel); *see also Jackson v. ProAmpac LLC*, No. 22-CV-03120 (NSR), 2023 WL 6215324, at *11 (S.D.N.Y. Sept. 25, 2023).

## IV.    EQUITABLE TOLLING SHOULD BE DENIED

The Second Circuit has repeatedly cautioned that "equitable tolling is considered a drastic remedy applicable only in rare and exceptional circumstances." *A.Q.C. ex rel. Castillo v. United*

*States*, 656 F.3d 135, 144 (2d Cir. 2011) (internal quotation marks and alterations omitted); *accord*

*Phillips v. Generations Family Health Ctr.*, 723 F.3d 144, 150 (2d Cir. 2013) (quoting *A.Q.C. ex*

*rel. Castillo*, 656 F.3d at 144). Thus, "[w]hen a movant does not provide any grounds showing

equitable tolling may be appropriate, it will not be applied." *Mark v. Gawker Media LLC*, No. 13-

CV-4347(AJN), 2014 WL 5557489, at *2 (S.D.N.Y. Nov. 3, 2004) (citing *Ouedraogo v. A–1 Int'l*

*Courier Serv., Inc.*, No. 12-CV-5651(AJN), 2013 WL 3466810, at *4 (S.D.N.Y. July 8, 2013)).

Plaintiff's motion provides no facts or arguments demonstrating the need for equitable

tolling in this case, beyond the conclusory assertion that Plaintiff has "been diligent in seeking this

certification." Mot. at 25.  This is neither true nor enough to satisfy Plaintiff's burden. *See, e.g.*,

*Ramos v. PJJK Rest. Corp.*, No. 15-CV-5672(PKC), 2016 WL 1106373, at *5 (S.D.N.Y. Mar. 10,

2016) (denying equitable tolling where "[p]laintiffs [ ] made no evidentiary showing as to why

equitable tolling [was] warranted" but instead "merely contend[ed] that courts 'routinely grant'

requests for equitable tolling in FLSA actions, and should be afforded to opt-in plaintiff's who

have not brought claims for 'reasons beyond their control[ ]'") (citation omitted).

As noted by other courts in this district in denying equitable tolling in an FLSA suit, the

equitable tolling inquiry is "a highly factual issue that depends on what and when a plaintiff knew

or should have known—an inquiry that is simply impossible to conduct when opt-in plaintiffs and

the facts specific to them have not yet been revealed." *Alvarado Balderramo v. Taxi Tours Inc.*,

No. 15-CV-2181(ER), 2017 WL 2533508, at *5 (S.D.N.Y. June 9, 2017); *see Hintergerger v.*

*Catholic Health Sys.*, No. 08-CV-380S, 2009 WL 3464134, at *15 (W.D.N.Y. Oct. 21, 2009)

(denying equitable tolling in an FLSA case because "[p]laintiffs here have offered no allegations

or proof from which this Court can conclude that a reasonably prudent potential plaintiff would

not have known of his or her right to receive overtime pay after 40 hours"); *see also Zhao v. Surge*

*Priv. Equity LLC*, No. 22-CV-7314 (KPF), 2023 WL 3477591, at *8 (S.D.N.Y. May 16, 2023) (rejecting similar request for tolling and deciding to "consider an application from any opt-in plaintiff based on an individualized showing that tolling is appropriate") (citing *Yuefeng Shi v. TL & CG Inc.*, No. 19-CV-8502 (SN), 2020 WL 4586359, at *6 (S.D.N.Y. Aug. 10, 2020); *Katz v. Equinox Holdings, Inc.*, No. 20-CV-9856 (VEC), 2022 WL 2952143, at *3 (S.D.N.Y. July 26, 2022)). Plaintiff commenced this action by filing a Complaint on May 17, 2022 and subsequently filed an Amended Complaint on July 8, 2022. Plaintiff waited nearly two (2) years to move for conditional certification, blaming his delay on the pendency of Defendants' motion to dismiss, filed on July 29, 2022, and Plaintiff's subsequent motion for reconsideration, filed on October 18, 2023. Opt-In Plaintiff Ramirez filed his Consent to Sue on June 29, 2023. Plaintiff Munoz clearly knew the facts upon which his claims are predicated at least 2 years ago, and Opt-In Plaintiff Ramirez knew or should have known the facts upon which his claims are predicated at least 1 year ago. Munoz and Ramirez have not set forth any justification for their delay in pursuing these claims, and should not now be afforded the benefit of equitable tolling.

For these reasons, Plaintiff's request for equitable tolling should be denied.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for conditional certification should be denied. To the extent the Court grants conditional certification, the scope of the collective should be limited to, at best, Tipped Front-of-House Employees who worked at the restaurant locations where Munoz and Ramirez were employed (La Grande Boucherie and Petite Boucherie) within the two to three years prior to notice being distributed and Defendants should be granted leave to prepare a counter-proposed Notice.

Dated:  New York, New York
         June 7, 2024

Respectfully submitted,

**GOLENBOCK EISEMAN
ASSOR BELL & PESKOE LLP**

By: */s/ Gina E. Nicotera*
         Alexander Leonard
         Gina E. Nicotera
         711 Third Avenue
         New York, New York 10017
         Telephone: (212) 907-7378
         aleonard@golenbock.com
         gnicotera@golenbock.com

         *Counsel for Defendants*

20