UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OSVALDO MUNOZ, ET AL.,

                Plaintiffs,

       -v-

THE GROUP US MANAGEMENT LLC, ET
AL.,

                Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/6/2025

**MEMORANDUM AND ORDER**

22-CV-4038 (MKV) (HJR)

**HENRY J. RICARDO, United States Magistrate Judge.**

       Plaintiffs brought this action on behalf of themselves and other similarly situated restaurant workers for violations of the minimum wage, overtime, tip-pooling, wage notice, and wage statement provisions of the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and their implementing regulations. *See* Second Amended Complaint, ECF No. 80 ("SAC") ¶¶ 74–96. Plaintiff Osvaldo Munoz worked as a busser at La Grande Boucherie, and Plaintiff Cristobal Ramirez worked as a food runner at Petite Boucherie Bistro and "as-needed" at Boucherie West Village.  *See* SAC ¶¶ 34, 39.  Plaintiffs allege that Defendant Emil Stefkov owns and controls these and four other Manhattan restaurants as a "single integrated enterprise" through an "umbrella association" known as The Group NYC.  SAC ¶¶ 7, 14.[1]  In addition to Stefkov, the Defendants

_____

[1] In addition to the La Grande Boucherie, Petite Boucherie Bistro, and Boucherie West Village, The Group NYC allegedly includes Kaiseki Room, located at 145 West 53rd Street, New York, NY 10019; Olio E Piu, located at 3 Greenwich Avenue, New York, NY 10014;

1

are The Group US Management LLC, La Grande Boucherie LLC, Olio Restaurants LLC, Boucherie Pas LLC, Boucherie LLC, and Petite Boucherie LLC.

Now before the Court is Plaintiffs' motion for conditional collective certification and for court facilitation of notice pursuant to 29 U.S.C. § 216(b). ECF No. 57. Plaintiffs seek an order: (1) granting conditional collective certification of plaintiffs' FLSA claim on behalf of "all non-exempt front-of-house and back-of-house employees . . . who were employed by Defendants in New York City, on or after the date six (6) years before the filing of the Complaint," including "a subclass of tipped employees;" (2) directing Defendants to provide the names, contact information, and other personal information of all potential collective members to Plaintiffs' counsel; (3) approving Plaintiffs' proposed Notice of Pendency of Lawsuit Regarding Wages ("Notice"), ECF No. 59-1, authorizing Plaintiffs to mail the Notice to potential collective members (in English and Spanish), and directing Defendants to post the Notice in Defendants' restaurants; and (4) tolling the statute of limitations "until such time that Plaintiff is able to send notice to protentional opt-in plaintiffs." ECF No. 57-1.

For the reasons set forth below, Plaintiffs' motion will be **GRANTED IN PART** and **DENIED IN PART**.

---

Boucherie Union Square, located at 225 Park Avenue South, New York, NY 10003; and Omakase Room, located at 14 Christopher Street, New York, NY 10014. SAC ¶ 7. Plaintiffs allege that Kaiseki Room is now closed but operated as Omakase Room Midtown. SAC ¶ 7(b). *See also* The Group Hospitality, https://www.thegroupus.com (last visited Jan. 2, 2025).

# I.     BACKGROUND

## A.     Plaintiffs' Claims

Except where otherwise indicated, the facts set forth herein are taken from the declarations submitted by each Plaintiff, and by their counsel, in support of the collective certification motion.

Plaintiff Munoz worked as a busser at La Grande Boucherie, located at 145 West 53rd Street, New York, NY 10019, from February 2021 through December 2021.  Declaration of Osvaldo Munoz ("Munoz Decl."), ECF No. 60 ¶ 1.  Plaintiff Ramirez worked as a food runner at Petite Boucherie, located at 14 Christopher Street, New York, NY 10014, and, as needed, at Boucherie West Village, located at 99 7th Avenue South, New York, NY 10014, from June 2022 through March 2023. Declaration of Cristobal Ramirez ("Ramirez Decl."), ECF No. 61 ¶ 1.

Both Plaintiffs complain that their employers improperly deducted an hourly tip credit from their wages in violation of the FLSA and related regulations. Specifically, both Plaintiffs assert that Defendants claimed a $5.00 tip credit, Munoz Decl. ¶ 8; Ramirez Decl. ¶ 8, but required them to engage in non-tipped activities such as cleaning the premises, rolling silverware, polishing glasses, and buying and delivering ingredients to other restaurants for more than thirty minutes continuously and taking up at least twenty percent of their shifts.  Munoz Decl. ¶ 14; Ramirez Decl. ¶ 10.  The FLSA, 29 U.S.C. § 203(m)(2)(A), "permit[s] an employer to pay a tipped worker a cash wage that is lower than the statutory minimum wage, provided that the cash wage and the employee's tips, taken

together, are at least equivalent to the minimum wage." *Inclan v. N.Y. Hosp. Grp.,
Inc.*, 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015). "When an employee performs both
tipped and untipped work, the question of whether an employer is entitled to apply
a tip credit for minimum wage purposes turns on whether the employee spends
more than twenty percent of his or her work week performing non-tipped work. If
so, the employer is not entitled to apply a tip credit, and must pay that employee
the full minimum wage." *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 500
(S.D.N.Y. 2017) (cleaned up), *aff'd*, 752 F. App'x 33 (2d Cir. 2018).[2]

Both Plaintiffs also complain that they were subjected to an "illegal tip
pooling system" in which non-tipped employees, such as hostesses and managers,
also participated. Munoz Decl. ¶ 17; Ramirez Decl. ¶ 13. Plaintiff Munoz further
asserts that he "would receive the same amount of tips every week" regardless of
the number of customers served and received only "a flat payment instead of the
actual gratuities earned" when working catering or private events. Munoz Decl.
¶ 18. Under the FLSA, the tip credit "shall not apply with respect to any tipped
employee" unless "all tips received by such employee have been retained by the
employee" and the employee "has been informed by the employer of the provisions of
this subsection." 29 U.S.C. § 203(m)(2)(A). While tip pooling among tipped
employees is permissible, the employer may not "allow[] managers or supervisors to

---

[2] Defendants argue that the Court dismissed Plaintiffs' claim that they were paid at an
invalid tip-credit rate, ECF No. 63 at 4, but the Court later reinstated that claim on
reconsideration. ECF No. 73.

keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." *Id.* § 203(m)(2)(B); *see also* 29 C.F.R. § 531.54 (tip pool must be "limited to employees who customarily and regularly receive tips" and may not include "managers and supervisors"). The FLSA's tip credit notice requirement "does not require that the notice be given in writing," *Hernandez v. Jrpac Inc.*, 2016 WL 3248493, at *23 (S.D.N.Y. June 9, 2016), but does require the employer to "show that it has informed employees that tips are being credited against their wages." *Inclan*, 95 F. Supp. 3d at 497.

Finally, Plaintiffs complain that they were underpaid due to time-shaving. Plaintiff Munoz asserts that he was required to arrive thirty minutes prior to the start of each shift and to stay thirty minutes past his shift, twice per week, to perform various tasks such as polishing silverware and glassware, setting up tables, and gathering and throwing away trash. Munoz Decl. ¶¶ 9, 11. Plaintiff Ramirez asserts that he was required to arrive ten minutes before each shift to perform tasks such as setting tables and arranging furniture before he was allowed to clock in. Ramirez Decl. ¶ 7. The FLSA provides that an employee must "receive[] compensation for his employment in excess of [forty hours per week] at a rate not less than one and one-half times the regular rate" of pay. 29 U.S.C. § 207(a)(1).[3]

---

[3] Plaintiff Ramirez also claims he was improperly denied call-in pay (see Ramirez Decl. ¶¶ 15–16), but this claim is not addressed in Plaintiffs' motion.

In addition to the FLSA violations summarized above, Plaintiffs claim that their employers violated various notice requirements imposed by state law. Munoz Decl. ¶¶ 21–22; Ramirez Decl. ¶¶ 17–18. *See* Wage Theft Prevention Act, NYLL §§ 195(1), 195(3). However, these claims were dismissed on Defendants' motion to dismiss. ECF No. 33 at 10–13.

### B.    Procedural Background

Plaintiff Munoz filed this action on May 17, 2022, ECF No. 1, and filed a second amended complaint, adding Ramirez as a plaintiff, on October 10, 2024. ECF No. 80. On May 24, 2024, Plaintiffs filed their motion for collective certification, ECF No. 57, and supporting memorandum of law, ECF No. 58 ("Mot."), their own declarations, and the declaration of their attorney, C.K. Lee, authenticating various exhibits, ECF No. 59 ("Lee Decl."). On June 7, 2024, Defendants filed an opposition memorandum. ECF No. 63 ("Opp."). On June 14, 2024, Plaintiffs filed a reply memorandum. ECF No. 66 ("Reply").

By Order dated November 1, 2024, the parties were directed to file a joint status letter addressing whether the filing of the SAC mooted the earlier-filed Motion for Conditional Collective Certification and, if not, whether the Court should decide this motion with reference to the SAC. ECF No. 89 at 2. In response, Plaintiffs asserted that the SAC did not moot their conditional certification motion because that motion included the new allegations, claims, and parties that were added through the SAC such that "Defendants had every opportunity to address all of Plaintiffs' claims[.]" ECF No. 90 at 3. Defendants did not contend that the SAC

6

mooted the conditional certification motion, but argued that this motion should not be decided with reference to the SAC and that conditional certification would be premature in light of the fact that Defendants' time to respond to the SAC had not yet elapsed. *Id.* at 3. Defendants then filed an Answer to the SAC on December 4, 2024. ECF No. 96.

Because neither party contends that the SAC moots the instant motion for conditional certification and because Defendants have now answered that complaint, the Court will decide the motion based on the already-submitted briefing and with reference to the SAC. *See Edwards v. ServiceMaster Co., LLC, et al.*, 2021 WL 266549, at *1 (Jan. 26, 2021) (holding that "the filing of Plaintiffs' amended complaint does not moot Plaintiffs' pending motion for conditional certification" and deciding such motion based on the already-submitted briefing).

## II.    DISCUSSION

### A.    Legal Standards

The FLSA provides that "any one or more employees" may bring an action against an employer "for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Unlike a class action brought under Rule 23 of the Federal Rules of Civil Procedure, a collective action requires "similarly situated" employees to affirmatively opt-in to the litigation by filing written consents in the court where the action is brought. *Id.* "Although they are not required to do so by FLSA, district courts 'have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs' of the

pendency of the action and of their opportunity to opt-in as represented plaintiffs."
*Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (quoting *Hoffman-La Roche
Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

Courts in this Circuit apply a "sensible" two-step method for determining
whether to exercise this discretion. *See Myers*, 624 F.3d at 554–55. In the first
step, commonly referred to as "conditional certification," the named plaintiffs must
make a "'modest factual showing' that they and potential opt-in plaintiffs 'together
were victims of a common policy or plan that violated the law,'" at which point the
trial court may send (or direct plaintiffs' counsel to send) a notice to potential opt-in
plaintiffs. *Id.* at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261
(S.D.N.Y. 1997)). At the second stage, which typically occurs after discovery is
completed, the court determines whether the plaintiffs who opted-in are in fact
"similarly situated" to the named plaintiffs. *Id.* If not, the court may "de-certif[y]"
the collective and dismiss the opt-in plaintiffs' claims without prejudice. *Id.*

During the conditional certification stage, the requirement of a "modest
factual showing" cannot be satisfied solely by the "unsupported assertions" in the
plaintiffs' pleading, *id.*, or by allegations made on "information and belief."
*McGlone v. Cont. Callers, Inc.*, 867 F. Supp. 2d 438, 444 (S.D.N.Y. 2012). Evidence
is required. *Id.*; *see also Cuaya v. VI Dev. Grp., LLC*, 2020 WL 5494371, at *3
(S.D.N.Y. Sept. 10, 2020) ("[A] plaintiff must offer 'actual evidence of a factual
nexus' between his situation and those of other allegedly similarly situated
employees." (quoting *Qing Gu v. T.C. Chikurin, Inc.*, 2014 WL 1515877, at *3

8

(E.D.N.Y. Apr. 17, 2014)); *Brickey v. Dolgencorp., Inc.*, 272 F.R.D. 344, 348
(W.D.N.Y. 2011) (denying conditional certification where plaintiffs "offered no
admissible evidence" to support contentions made in the complaint); *Prizmic v.
Armour, Inc.*, 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006) ("[m]ere allegations
in the complaint are not sufficient; some factual showing by affidavit or otherwise
must be made." (quoting *Camper v. Home Quality Mgmt. Inc.*, 200 F.R.D. 516, 519
(D. Md. 2000))).

However, because the purpose of this first stage is "merely to determine
*whether* 'similarly situated' plaintiffs do in fact exist," plaintiffs have a lower burden
of proof. *Myers*, 624 F.3d at 555 (emphasis original); *accord Damassia v. Duane
Reade, Inc.*, 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006) ("[A] plaintiff's burden
at this preliminary stage is 'minimal.'" (quoting *Wraga v. Marble Lite, Inc.*, 2006 WL
2443554, at *1–2 (E.D.N.Y. Aug. 22, 2006))). A showing that plaintiffs themselves
"were subjected to certain wage and hour practices at the defendants' workplace
and to the best of their knowledge, and on the basis of their observations, their
experience was shared by members of the proposed [collective]" is a sufficient basis
from which to infer the "common policy" required for conditional collective
certification. *Cortes v. New Creators, Inc.*, 2015 WL 7076009, at *3 (S.D.N.Y. Nov.
12, 2015) (quoting *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368
(S.D.N.Y 2007)). Documents properly considered in this inquiry "include plaintiffs'
'own pleadings, affidavits, declarations, or the affidavits and declarations of other
potential class members.'" *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d

545, 557-58 (S.D.N.Y. 2013) (quoting *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 661 (S.D.N.Y. 2013)).

Consistent with the "minimal" burden of proof assigned to plaintiffs at the conditional certification stage, the court "should not weigh the merits of the underlying claims," *Hamadou*, 915 F. Supp. at 662 (citing *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)), and should not "resolve factual disputes, decide substantial issues going to the ultimate merits, or make credibility determinations." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 158 (S.D.N.Y. 2014) (citing *Lynch*, 491 F. Supp. 2d at 368). Accordingly, where there is a conflict between the parties as to the facts underlying plaintiffs' wage and hour claims, the court should treat plaintiffs' attestations as true. *See Cortes v. New Creators, Inc.*, 2015 WL 7076009, at *1 n.1.

In cases involving employees at multiple business locations, "courts consider whether the plaintiffs have made an adequate factual showing to support an inference that . . . a uniform policy or practice exists, and whether the locations share common ownership or management." *Hamadou*, 915 F. Supp. 2d at 662; *see also Rosario v. Valentine Ave. Disc. Store, Co. Inc.*, 828 F. Supp. 2d 508, 516–17 (E.D.N.Y. 2011) (collecting cases). Both showings are required—even where it is clear that multiple business locations share common ownership and management, plaintiffs must adduce enough evidence to support an inference of a common *wage policy* across all locations before a multi-location collective may be certified. *See, e.g., Trinidad*, 962 F. Supp. 2d at 558–60 (declining to authorize notice to all Pret A

10

Manger restaurant locations in New York City, or even to the full list of locations at which the named plaintiffs had worked, because "plaintiffs have not demonstrated across all locations a uniform policy of failure to pay overtime compensation"); *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 355–56 (E.D.N.Y. 2008) (conditionally certifying a group of employees at one pizza store but declining to include employees at five other stores in the same chain where plaintiffs made only "generalized allegations of wrongdoing" regarding one of the stores, supported by hearsay statements of questionable reliability); *cf. Morris v. Lettire Constr., Corp.*, 896 F. Supp. 2d 265, 270–71 (S.D.N.Y. 2012) (finding "a reasonable inference that plaintiffs' experiences reflected a company-wide policy" where supported by plaintiffs' allegations that they received "purely 'straight time' pay in the same distinctive manner . . . no matter where they worked or who supervised them").

## B.    Defining The Collective

In support of the their motion, both Plaintiffs submitted declarations attesting that they were paid a tip-credited minimum wage but were required to engage in non-tipped activities for more than twenty percent of their work day; that they were subject to an illegal tip pool that improperly included non-tipped employees; and that they were subject to time-shaving due to requirements that they complete certain off-the-clock tasks either before or after their scheduled shifts.  Munoz Decl. ¶¶ 8–9, 11, 14, 17–18, 21–22; Ramirez Decl. ¶¶ 7–8, 10, 13, 16–18.

In addition to recounting their own experiences, both Plaintiffs assert that "all employees of Defendants' restaurants" were subject to common wage and hour policies, based on their own observations and conversations with co-workers. Munoz Decl. ¶ 4; Ramirez Decl. ¶ 4. Defendants do not submit any evidence of their own in opposition to the motion, but argue that, at best, Plaintiffs' submissions demonstrate that Munoz and Ramirez are similarly situated to "Tipped Front-of-House Employees at the restaurant locations where Munoz and Ramirez were actually employed." Def. Mem. at 11.[4] Thus, the critical question for purposes of this motion is whether Plaintiffs have made a sufficient showing that all employees at Defendants' restaurants are subject to the same wage and hour policies (1) across job categories, and (2) across job locations.

### 1.    Employee Job Categories

Plaintiff Munoz claims knowledge of the policies applicable to other employees based on his conversations with four co-workers: "Milton," "Fabio," Samuel Lopez, and Jose Tapia, all bussers at La Grande Boucherie. Munoz Decl. ¶ 3. He refers to regular conversations with his co-workers "during breaks, while preparing drinks and snacks, and in between serving customers[.]" Munoz Decl. ¶ 4. During these conversations, Fabio, Lopez, and Tapia complained about unpaid off-the-clock prep-work they were required to perform immediately before and after

---

[4] Plaintiffs describe "tipped employees" as servers, food runners, barbacks, and bartenders. ECF No. 57-1. Defendants describe "tipped employees" as runners, bussers, barbacks, and bartenders. ECF No. 63 at 11.

their shifts.  Munoz Decl. ¶¶ 10–12.  Further, Munoz states that he observed his co-workers perform non-tipped duties continuously for more than thirty minutes and taking up more than two hours of their shifts.  Munoz Decl. ¶¶ 14–16.  Regarding the tip pool, Plaintiff Munoz states that Milton was "aware of the unfair tip pooling scheme" and that he and other co-workers would "frequently complain" that non-tipped employees participated in the tip pool.  Munoz Decl. ¶¶ 17, 19.

Similarly, Plaintiff Ramirez says he discussed wages with two co-workers: "Fernando" and "Sebastian," who both worked as food runners at Petite Boucherie.  Ramirez Decl. ¶ 3.  Plaintiff Ramirez states that he and his co-workers "always talked about our wages during work, while on the floor and while performing non-tipped duties."  Ramirez Decl. ¶ 4.  He attests that he "observed other employees come in and work before their scheduled start times" and "not clock-in until [the] official start time."  Ramirez Decl. ¶ 7.  Further, he states that other tipped employees were required to perform non-tipped duties continuously for more than thirty minutes at a time and over twenty percent of each shift.  Ramirez Decl. ¶¶ 10–11.  Regarding tip pooling, Plaintiff Ramirez attests that he and his co-workers complained that it was "unfair that managers were part of the tip pool[.]" Ramirez Decl. ¶ 13.

"There is a 'consensus in this district that where a plaintiff bases an assertion of a common policy on observations of coworkers or conversations with them, he must provide a minimum level of detail regarding the contents of those conversations of observations.'" *Ravey v. Jay-Jay Cabaret, Inc.*, 2016 WL 3020933,

at *4 (S.D.N.Y. May 23, 2016) (quoting *Reyes v. Nidaja, LLC*, 2015 WL 4622587, at

*3 (S.D.N.Y. Aug. 3, 2015)).  However, plaintiffs are not required to provide "the

times and dates" of the conversations, so long as a court "'can fairly infer' that other

[employees] 'labored under similar working conditions and thus suffered the same

violations of the FLSA.'"  *Id.* (quoting *Guzman v. Three Amigos SJL Inc.*, 117 F.

Supp. 3d 516, 525 (S.D.N.Y. 2015)).

      Based on Plaintiffs' showing, it is fair to infer that other tipped employees—

at least those who worked at La Grande Boucherie and Petite Boucherie (hereafter,

the "Primary Locations")—were paid at the tip-credited minimum wage but were

required to spend twenty percent or more of their working time on non-tipped

activities; were subjected to unlawful tip pool arrangements that improperly

included non-tipped employees; and were subjected to time-shaving for time worked

off-the-clock before and after their scheduled shifts.[5]  Munoz Decl. ¶¶ 8–9, 11, 14,

17–18; Ramirez Decl. ¶¶ 7–8, 10, 13.  Plaintiffs' declarations included the names of

the co-workers with whom they spoke, and the circumstances (if not the dates) of at

least some of the conversations during which the co-workers voiced complaints

similar to those of the named Plaintiffs.[6]  While they are somewhat conclusory,

---

[5] Whether Plaintiffs' proof supports conditional certification of employees working at
Defendants' other five locations is discussed below.

[6] For example, Plaintiff Munoz attests that he would go to the bar with Fabio, Lopez, and
Tapia, who would complain about the amount of non-tipped work they were required to do
each shift and that their tips did not increase despite an increase in the number of
customers served.  Munoz Decl. ¶ 16.  Plaintiff Ramirez similarly attests that while
Fernando and Sebastian were doing side work with him, they would complain about the

these declarations are adequate to make the required modest showing that other tipped employees were similarly situated with respect to the wage policies complained of, at least at the two locations where the other referenced employees work. *See Hernandez v. Bare Burger Dio Inc.*, 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013); *Mei Rong Du v. Dingxiang Inc.*, 2020 WL 7404984, at *6 (S.D.N.Y. Dec. 17, 2020) (conditionally certifying collective based on sworn declaration of named plaintiff reporting information learned from seven other employees, identified by name or nickname, about the wages they were paid and the hours they worked); *Cuaya*, 2020 WL 5494371, at *5 (conditionally certifying collective based on sworn declaration attesting that named plaintiff spoke with at least ten other employees about their wages and hours).

At this preliminary stage, "courts regularly rely on plaintiffs' affidavits and hearsay statements in determining the propriety of sending notice." *Cuaya*, 2020 WL 5494371, at *6. Here, Plaintiffs have adequately described conversations with other employees at the Primary Locations concerning the tip-credited minimum wage, the amount of side work required, the inclusion of non-tipped employees in the tip-pool, and off-the-clock work before and after shifts. Accordingly, they have satisfied their minimal burden of showing that other tipped employees at the Primary Locations are "similarly situated" regarding these alleged FLSA violations.

---

amount of non-tipped work they were required to do, Ramirez Decl. ¶ 11, and that it was unfair that managers participated in the tip pool. *Id.* ¶ 13.

However, to the extent the proposed collective extends to *all* tipped and non-tipped non-exempt employees, Plaintiffs have not satisfied their burden. A FLSA collective "may cover individuals with multiple job functions," but only if the plaintiffs have shown that such individuals "'are subject to a common unlawful policy or practice.'" *Gomez v. Kitchenette 123 Inc.*, 2017 WL 4326071, at *5 (S.D.N.Y. Sept. 5, 2017) (quoting *Zaldivar v. JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 323 (E.D.N.Y. 2016)). In this case, Plaintiffs have not made and could not make any such showing as to non-tipped employees because the bulk of their cognizable federal claims—as to the tip-credit minimum wage they were paid, the amount of side work they were required to do, the alleged insufficiency of the notice concerning the tip credit, and the unlawful tip pooling arrangement—apply, by definition, only to tipped employees.

Similarly, all of the co-workers described in Plaintiffs' declarations were tipped employees. Plaintiff Munoz names only other bussers at La Grande Boucherie, Munoz Decl. ¶ 3, and Plaintiff Ramirez names only other food runners at Petite Boucherie. Ramirez Decl. ¶ 3. Plaintiffs do not mention—much less provide evidence concerning—the wage policies applicable to non-tipped employees such as cooks, food preparers, or porters. Accordingly, Plaintiffs do not provide any non-conclusory evidence that they were subject to the same employment practices. The collective must therefore be limited to tipped employees. *See Mei Rong Du*, 2020 WL 7404984, at *7 (limiting collective to kitchen and pastry workers where plaintiff failed to provide "specific conversations, names, or other details" as to

compensations policies applicable to other employees); *Cuaya*, 2020 WL 5494371, at *6 (limiting collective to kitchen workers where "the only statements Cuaya makes with respect to non-kitchen staff are conclusory allegations that 'other employees were also required to work for hours for which they were not paid' and that 'no employees . . . were ever paid a spread of hours premium"); *Kitchenette 123*, 2017 WL 4326071, at *5 (limiting collective to delivery persons where eight of the nine co-workers mentioned in plaintiff's affidavit were delivery persons, as was he, and he provided "no concrete details as to any conversations with or observations of other individuals beyond those enumerated").[7]

### 2. Employee Locations

While Plaintiffs seek collective certification for workers at all seven of Defendants' restaurants, Plaintiffs' declarations mention by name other employees who regularly worked at only two of Defendants' seven locations, La Grande

---

[7]    In *Kitchenette 123*, the named plaintiff attempted to make up for this deficiency by attesting in broad terms that he observed "various employees being subject to wage and hour violations," beyond the individuals actually named in his declaration, and stating "generally that such observations were informed by 'conversations and experience,'" without specifying any such conversations or experiences. 2017 WL 4326071, at *5. This was "insufficient to meet his modest burden of showing that such employees may have been subject to the same wage and hour violations to which he was purportedly subject." *Id.*; *see also Jin Yun Zheng v. Good Fortune Supermarket Grp. (USA), Inc.*, 2013 WL 5132023, at *5 (E.D.N.Y. Sept. 12, 2013) (refusing to certify collective in time shaving case where, instead of identifying specific employees subject to the same unlawful policies or otherwise explaining how she knew that her co-workers' time was shaved, plaintiff "merely restate[d] her conclusory factual allegations in a variety of forms," such as by attesting vaguely that, "[b]ased on [her] personal observation, other supermarket clerks were subject to the same time shaving policy"). Plaintiffs rely on similar broad assertions here as to non-tipped employees.

Boucherie, where Munoz worked, and Petite Boucherie, where Ramirez worked. While Ramirez says he worked at Boucherie West Village on an as-needed basis, he does not say how often this occurred, he provides no details about his work at that location, and he identifies no other employees who worked there. Further, the declarations make no statement at all about individuals who regularly worked at Defendants' four other restaurants, Kaiseki Room, Olio e Piu, Boucherie Union Square and Omakase Room.

In support of their effort to include other locations in the collective, Plaintiffs claim that Defendants operate all seven of their restaurants as a single integrated enterprise under the control of Stefkov. Plaintiffs submit screenshots from Defendants' websites demonstrating that the seven New York City restaurants are promoted as sister restaurants under the umbrella of The Group NYC. *See* Lee Decl. ¶¶ 4–6, 8–9 & Exs. B–D, F–G. The seven restaurants are all advertised on the shared website of The Group NYC. *Id.* Ex. B. This shared advertising includes listing the chefs of all restaurants on the website, *id.* Ex. G, jointly advertising job listings for all of the restaurants, *id.* Ex. D, and booking events through a centralized platform. *Id.* Ex. F. Additionally, through The Group NYC, the restaurants also appear to share a Founder, Chief Executive Officer, Director of Operations, Corporate Chef, Director of Events, Brand Director, Accounting Manager, Director of Human Resources, and Public Relations Manager. Lee Decl. ¶ 7 & Ex. E. Plaintiffs also state that all restaurants use a common employee

handbook, but do not identify any provision of that handbook that has any bearing on their claims. *See* Munoz Decl. ¶ 4; Ramirez Decl. ¶ 4.

Plaintiffs also claim they were required to transport supplies between restaurants within this group. For example, Plaintiff Munoz says he was sent to the Greenwich and other locations to pick up supplies, and that he observed his co-workers transferring supplies between restaurants approximately twice per week. Munoz Decl. ¶ 5. Plaintiff Ramirez similarly states he was required to transfer supplies between Petite Boucherie and the West Village and Greenwich locations, and that he observed his co-workers transferring supplies between restaurants "almost every workday." Ramirez Decl. ¶ 5.

Where, as here, plaintiffs claim a "single integrated enterprise" to seek conditional certification of a collective including employees of different corporate entities at different locations, they must make at least a "modest showing" that the individual restaurants not only "share common ownership" but "treat employees, equipment, and supplies interchangeably." *Lijun Geng v. Shu Han Ju Restaurant II Corp.*, 2019 WL 4493429, at *14 (S.D.N.Y. Sept. 9, 2019) (collecting cases); *accord Cuaya*, 2020 WL 5494371, at *8. Additionally, plaintiffs must show that each location "had employees that were 'similarly situated' with regard to the allegedly unlawful . . . policies." *Trinidad*, 962 F. Supp. 2d at 557-60 (conditionally certifying a collective extending to six Pret A Manger stores rather than all thirty-three stores in New York City or even all ten stores at which one or more of the named plaintiffs worked); *see also Mei Rong Du*, 2020 WL 7404984, at *7 (conditionally certifying a

collective limited to kitchen workers at one of three commonly-owned and managed restaurants, because plaintiff's declarations said "nothing about the hours worked or wages paid at the restaurants other than Birds of a Feather"); *Kitchenette 123*, 2017 WL 4326071, at *6–7 (conditionally certifying a collective as to two Kitchenette locations but not as to a third because plaintiff provided no evidence "that the specific policies he identifies . . . existed generally at all of the Kitchenette locations"); *Jing Fang Luo v. Panarium Kissene Inc.*, 2016 WL 11263668, at *9–10 (E.D.N.Y. Nov. 23, 2016) (conditionally certifying a collective extending to just three Fay Da Bakery locations because plaintiffs "have simply not provided the Court with enough specifics to meet even the modest burden that they face at this juncture" as to other locations, and collecting cases), *report and recommendation adopted*, 2017 WL 1216571 (E.D.N.Y. Mar. 30, 2017).

Here, Plaintiffs allege that Defendants regularly required employees to transfer supplies between different restaurant locations.  *See* Munoz Decl. ¶ 5; Ramirez Decl. ¶ 5.  While these facts weigh in favor of finding a common enterprise, they fall short of demonstrating that Defendants' wage and hour policies were the same at these different locations.  For example, it is not clear from these declarations whether the employees at other restaurants who transferred supplies were tipped employees or non-tipped employees, which is an important fact for determining whether they were similarly situated with respect to the allegedly unlawful policies.

20

Plaintiffs also allege that employees were interchanged between different restaurant locations. Plaintiff Munoz makes the conclusory assertion that "it was common for employees to be interchanged" between La Grande Boucherie and Kaiseki Room, which have the same address, but provides no detail regarding how often, when, or which categories of employees were interchanged between those restaurants or what type of work they were required to perform. *See* Munoz Decl. ¶ 5. Munoz does not refer to any particular employees of the Kaiseki Room, even by first name, nor does he make any non-conclusory statements that Kaiseki Room had the same wage and hour policies as the Grand Boucherie. The closest Munoz comes to doing so is his statement that he and Milton, along with other unidentified employees at La Grande Boucherie, were also "required to clean the Kaiseki Room in addition to La Grande Boucherie." Munoz Decl. ¶ 15. But the declaration says nothing about the duties of those employees who regularly worked the neighboring Kaiseki Room, including whether they were required to clean that or any other restaurant and, if so, whether they were tipped employees or non-tipped employees. Plaintiff Ramirez attests that he worked at Boucherie West Village "on an as-needed basis," Ramirez Decl. ¶ 1, but refers to Petite Boucherie as his "primary location," Ramirez Decl. ¶ 5, and provides no details about when or how often he worked at Boucherie West Village. Despite claiming to have first-hand knowledge of the working conditions at Boucherie West Village, Ramirez provides no non-conclusory statements about the wage and hours policies at that location, nor does he mention any conversations with others who worked at Boucherie West Village.

21

Munoz asserts that managers were transferred among restaurant locations and "would cover for each other on an as needed basis," Munoz Decl. ¶ 6, but provides no further details about how he knew that the managers were working at other locations when not at the restaurant where he worked. While Ramirez claims that managers shared in the tip pool, Ramirez Decl. ¶ 13, he does not claim to have observed managers being transferred among restaurant locations. Plaintiffs argue that transferred managers "presumably" implemented the same policies at the various restaurants, but this claim is speculative and lacks any supporting detail. *See* Reply at 8. Plaintiffs further suggest that there was a common policy of managers sharing in the tip pool, Reply at 9, but Munoz—the only Plaintiff who claimed to have observed the transfer of managers between locations—makes no assertion that "managers," as opposed to other types of non-tipped employees, shared in the tip pool. *See* Munoz Decl. ¶¶ 17–19 (allegations about non-tipped employees sharing tips).

Although Plaintiffs have shown that Defendants' restaurants are jointly owned, jointly promoted, and jointly managed in certain respects, such as sharing supplies and occasionally exchanging employees and managers, they "have simply not provided the Court with enough specifics to meet even the modest burden that they face at this juncture" to show that the specific wage and hour policies of which they complain were "uniform" across all restaurants. *Jing Fang Luo*, 2016 WL 11263668, at 9–10. Consequently, the collective will be limited to tipped employees who worked at the Primary Locations: La Grande Boucherie and Petite Boucherie.

22

### C.    Production of Potential Opt-In Plaintiff Information

Plaintiffs seek production of an Excel spreadsheet containing contact information (including "names, titles, compensation rates, last known mailing addresses, email addresses, all known telephone numbers and dates of employment") for the employees within the conditionally certified collective.  Mot. at 22.  Plaintiffs request this information for qualifying individuals who were "employed by Defendants at any point in the six years prior to the entry of" the Court's order.  *Id.*  Defendants resist producing email addresses and telephone numbers, arguing this is "inherently private information," and further contend that the production should extend no further back than the maximum FLSA statute of limitations, which is three years.  *Id.* Opp. at 15–16.

Courts in this Circuit "routinely grant . . . motions to compel production of the names and addresses of potentially similarly situated employees who may wish to 'opt-in' to a collective action" following conditional certification.  *Anglada v. Linens 'N Things, Inc.*, 2007 WL 1552511, at *7 (S.D.N.Y. Apr. 26, 2007) (collecting cases), *report and recommendation adopted* (May 22, 2007); *accord Cortes*, 2015 WL 7076009, at *4.  Moreover, telephone numbers and email addresses permit a more efficient means of providing notice than mailing addresses, while minimally intruding on the employees' privacy.  *See, e.g., Diatta v. Iguana New York Ltd.*, 2016 WL 2865132, at *6 (S.D.N.Y. May 10, 2016) ("Courts routinely order discovery of names, addresses, and telephone numbers in FLSA actions."); *Racey*, 2016 WL 3020933, at *10 (ordering defendants to provide "a list of the names, addresses,

telephone numbers, email addresses, and dates of employment for potential class members"). Additionally, courts commonly require the employer to disclose the potential collective members' hourly rates (which, in any event, are likely identical, at any one time). *E.g.*, *Hernandez v. NGM Mgmt. Grp. LLC*, 2013 WL 5303766, at *5 (S.D.N.Y. Sept. 20, 2013) (ordering defendants to produce "a computer-readable list of the names, addresses, compensation rates, telephone numbers, and dates of employment" for all potential opt-in plaintiffs).

Defendants are correct, however, as to the FLSA statute of limitations, which is three years in cases of willful violations. 29 U.S.C. § 255(a); *see also* Notice at 2 (informing recipients that the FLSA statute of limitations is "two or three years"). The statute of limitations under the NYLL is six years, *see* NYLL § 198(3), but that does not affect Plaintiffs' FLSA claims, and no NYLL class has been certified in this case. Thus, "the three-year period more effectively serves the goal of efficiency . . . and will avoid confusing individuals whose claims arise only under the NYLL." *Contrera v. Langer*, 278 F. Supp. 3d 702, 722 (S.D.N.Y. 2017) (quoting *Rojas v. Kalesmeno Corp.*, 2017 WL 3085340, at *6 (S.D.N.Y. July 19, 2017)).

As such, Defendants will be required to provide a list (in Excel format if possible) limited to the names, addresses, email addresses, telephone numbers, dates of employment, and current (or most recent) job titles and compensation rates for tipped employees who worked at the Primary Locations on or after May 17, 2019—three years prior to the date when this action was filed.

**D.    Content and Distribution of the Notice**

"At the conditional certification stage, the district court monitors both the drafting and the distribution of the Notice of Pendency to ensure timeliness and correctness, and courts have 'broad discretion' over the details of the Notice." *Garcia Ramos v. DNC Food Serv. Corp.*, 2020 WL 2832776, at *8 (S.D.N.Y. June 1, 2020) (quoting *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 106 (S.D.N.Y. 2003)).  In this case, the proposed Notice will require revision to conform to the scope of the collective certified by the Court.  Beyond that, Defendants articulate a variety of objections to the content of the Notice and to Plaintiffs' distribution plans for the Notice.  *See* Opp. at 16–17.

In evaluating the content of an FLSA notice, a court should strive to ensure that potential opt-in plaintiffs receive "accurate and timely notice concerning the pendency of the collective action, so that [they] can make informed decisions about whether to participate." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011) (quoting *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007)).  To that end, an FLSA collective notice generally should contain:

> a description of some or all of the following: (1) the purpose of the notice; (2) the nature of the lawsuit filed and the relief being sought; (3) the proposed class composition; (4) the legal effect of joining the lawsuit; (5) the fact that the court has not taken any position regarding the merits of the lawsuit; (6) how to join the lawsuit; (7) the purely voluntary nature of the decision and the legal effect of not joining the lawsuit; (8) the prohibition against retaliation; and (9) the relevant contact information for any inquiries.

*Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 566 (S.D.N.Y. 2012).  Courts in this District have also held that the notice should include a warning that opt-in plaintiffs may be required to provide information, appear for deposition, or testify in court.  *See id*. at 567 (modifying proposed notice to explain such a possibility).

Here, the proposed Notice contains most of the required content, including a warning about the litigation responsibilities that might attend opting in.  *See* Notice at 2.  It also states in general terms that Plaintiffs' counsel, Lee Litigation Group, PLLC ("LLG"), is handling the lawsuit on a "contingency fee" basis, meaning that opt-in plaintiffs who agree to be represented by LLG will not have to pay any attorneys' fee or expense as the lawsuit proceeds.  *Id*.  The Notice provides that LLG "may ask the Court to award it up to one-third of the monetary recovery."  While not inaccurate, this language fails adequately to convey that, upon settlement (or after a judgment in favor of Plaintiffs), the Court will evaluate any request for attorneys' fees and costs and will approve such an award only after determining that it is fair and reasonable.  Plaintiffs are directed to add language to the Notice making this point clear.  Likewise, although Plaintiffs need not detail the specific costs and expenses that may be incurred in this litigation, the Notice should at least mention how costs will be handled in the event of a judgment in favor of Defendants.

Defendants request that the Notice include contact information for defense counsel, as well as Plaintiffs' counsel.  Opp. at 17.  Plaintiffs do not object to this request.  Courts in this District, although not unanimously, "'have generally

concluded' that the contact information of defendants' counsel 'is appropriate for inclusion in a notice of collective action.'" *Benavides v. Serenity Spa NY Inc.,* 166 F. Supp. 3d 474, 486–87 (S.D.N.Y. 2016) (quoting *Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 118 (S.D.N.Y. 2015)); *see also She Jian Guo v. Tommy's Sushi Inc.*, 2014 WL 5314822, at *4 (S.D.N.Y. 2014) ("Inclusion of such information is routine."). Plaintiffs shall therefore add the names and contact information of Defendants' attorneys. The Notice should also advise opt-in plaintiffs that once they are represented by counsel (whether LLG or other attorneys), they should not contact Defendants' lawyers themselves, but should instead rely on counsel to do so. *See Benavides*, 166 F. Supp. 3d at 487; *Cohan v. Columbia Sussex Mgmt.*, 2013 WL 8367807, at *13 (E.D.N.Y. Sept. 19, 2013), *aff'd*, 2016 WL 1045532 (E.D.N.Y. Mar. 15, 2016).

Plaintiffs propose sending the Notice in Spanish as well as English. Mot. at 24. "Generally, courts permit notice to be 'translated into the mother tongue of non-English speaking groups of potential plaintiffs.'" *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 76 (E.D.N.Y. 2016) (quoting *Colon v. Major Perry Street Corp.*, 2013 WL 3328223, at *8 (S.D.N.Y. July 2, 2013)); *accord Sanchez v. El Rancho Sports Bar Corp.*, 2014 WL 1998236, at *5 (S.D.N.Y. May 13, 2014) (Spanish-language notice forms permitted). Here, Plaintiffs argue in their brief that many prospective plaintiffs are Spanish speakers. Mot. at 24. Although Plaintiffs provide no evidentiary support for this assertion, Defendants do not object to translation. Thus, the Court will direct counsel to have the Notice translated into Spanish.

Plaintiffs request that the Court approve the dissemination of the Notice "by mail, e-mail, and text messages." Mot. at 23. "Courts in the Second Circuit have permitted dissemination of notice by mail, email, and text message 'where, as here, the nature of the employer's business facilitated high turnover rate among employees.'" *Chui v. Am. Yuexianggui* of *LI LLC*, 2020 WL 3618892, at *10 (E.D.N.Y. July 2, 2020) (quoting *Vasto v. Credico (USA) LLC*, 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016)); *see also Qiang Lu v. Purple Sushi Inc.*, 447 F. Supp. 3d 89, 97 (S.D.N.Y. 2020). The Court will authorize Plaintiffs' counsel to disseminate the Notice by mail, email, and/or text message. However, to protect potential collective members from undue annoyance, counsel shall not contact any individual more than twice during the 60-day opt-in period via any one channel of communication.

Defendants will also be required to post the Notice, in English and Spanish, at the Primary Locations, in a location easily accessible to tipped employees. Defendants resist doing so, arguing that posting the Notice on premises could cause "confusion and disruption in the workplace." Opp. at 16. Many employers raise such objections in FLSA cases. Most courts, however, reject them, concluding that any "disruption" would be minimal, and outweighed by the advantages of making the Notice easily available to all current employees. *See*, *e.g.*, *Chui*, 2020 WL 3618892, at *11 (collecting cases); *Qiang Lu*, 447 F. Supp. 3d at 97; *Whitehorn*, 767 F. Supp. 2d at 449; *Trinidad*, 962 F. Supp. 2d at 564.

### E.    Equitable Tolling

Ordinarily, the statute of limitations on an FLSA claim "continues to run with respect to each potential plaintiff's collective action claim until that plaintiff files the written consent form opting into the suit." *Whitehorn*, 767 F. Supp. 2d at 449; *see also* 29 U.S.C. § 256.  In a collective action, equitable tolling of the statute of limitations may be warranted to avoid "inequitable circumstances" where individual plaintiffs have acted with "reasonable diligence in pursuing their claims," but where, due to the passage of time between the filing of the action and the dissemination of a notice of pendency, "a substantial number of class members may now be time-barred" through no fault of counsel or the class representative. *Jackson*, 298 F.R.D. at 170.

Here, Plaintiffs request that the FLSA statute of limitations be tolled for all collective members "until such time that Plaintiffs are able to send notice to potential opt-in plaintiffs." Mot. at 24.  However, Plaintiffs first filed their Motion for Conditional Collective Certification more than two years after they commenced suit.  *Cf. Jackson*, 298, F.R.D. at 170–71 (tolling statute of limitations "as of the date of filing of the motion" for a limited period of time where plaintiffs filed their certification motion within three months of initiating the action).

Because "the application of the equitable tolling standard is 'highly case-specific,'" the "burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff." *Contrera v. Langer*, 278 F. Supp. 3d 702, 726 (S.D.N.Y. 2017) (quoting *Wilder v. U.S. Dep't of Veterans Affairs*, 175 F. Supp. 3d

82, 90 (S.D.N.Y. 2016)).  At present, nothing about this case presents the kind of "rare and exceptional circumstances" that would merit equitable tolling.  *See Andon v. SDG Props., Inc.*, 2018 WL 3970910, at *3 (S.D.N.Y. Aug. 20, 2018) ("Equitable tolling is appropriate only in rare and exceptional circumstances . . . where a plaintiff has been prevented in some extraordinary way from exercising his rights.") (internal quotations omitted).  Thus, the Court agrees with Defendants, *see* Opp. at 17–19, that Plaintiffs have not demonstrated any entitlement to blanket tolling. This decision is without prejudice to a later application for equitable tolling by one or more plaintiffs based on individual circumstances.  *See, e.g.*, *Cuaya*, 2020 WL 5494371, at *13–14 (denying equitable tolling without prejudice because plaintiff "failed to allege that any potential opt-in plaintiff exists 'who intends to join the collective but who risks becoming time-barred or has been prevented in some extraordinary way from exercising his rights'").

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion for conditional collective certification is **GRANTED** in part and **DENIED** in part.

No later than two weeks from the date of this Memorandum and Order:

1. Defendants shall produce a spreadsheet, in Excel format if possible, containing the names, last known mailing addresses, email addresses, and telephone numbers, dates of employment, current or most recent job title, and current or most recent compensation rate, for tipped employees at the Primary Locations; and

2. The parties shall, after meeting and conferring, prepare and submit to the Court for its approval a revised form of Notice (including the related opt-in form) and a proposed distribution order, incorporating the Court's rulings.

**SO ORDERED.**

Dated: January 6, 2025
      New York, New York

Henry J. Ricardo
United States Magistrate Judge

31